STATE of Wisconsin, Plaintiff-Respondent,

v.

Eugene NELSON, Defendant-Appellant.†

Court of Appeals

*Nos. 87–2273–CR, 87–2274–CR. Submitted on briefs June 24, 1988.—Decided September 8, 1988.*

(Also reported in 432 N.W.2d 115.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Kenneth P. Casey,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *David J. Becker,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J. Eugene Nelson appeals from a judgment convicting him of multiple-count charges of sexual assault and bail jumping, and from an order denying his postconviction motions. There were two sets of charges. Nelson was accused of sexually assaulting B.R. on November 15, 1985, and assaulting T.M. on November 17, 1985. In each case, an addition-

al charge of bail jumping was added because Nelson had been released on bond in connection with an earlier sexual assault charge at the time the offenses in question were alleged to have occurred, and one of the conditions of his bond was that he commit no crimes while on release.

The issues are: (1) whether a conviction for bail jumping in conjunction with a conviction for the offense which forms the basis for the bail jumping charge constitutes "multiple punishment" in violation of state and federal constitutional prohibitions against double jeopardy; and (2) whether the trial court abused its discretion by ordering all charges tried together. We see no constitutional violation and no abuse of discretion by the trial court. We therefore affirm.

The basic facts are not in dispute. Nelson was charged with two counts of sexual assault and one count of bail jumping in connection with the assault of B.R., and three counts of second degree sexual assault and one count of bail jumping in T.M.'s case. When the state moved that the two cases be joined for trial, Nelson objected, claiming that evidence in T.M.'s case that her attacker had made a threatening reference to a particularly grisly and well-publicized murder in the La Crosse area would prejudice his defense in B.R.'s case. He also contended that his defenses in the two cases were inconsistent. The trial court granted the state's motion.

Nelson, asserting that he intended to take the stand in his own defense in T.M.'s case, but wished to avail himself of his fifth amendment rights with respect to the B.R. charges, moved the court to order the prosecution to refrain from cross-examining him on those charges while he was testifying in T.M.'s

case. The trial court granted the motion. Then, over Nelson's objection, the court informed the jury of the ruling.

The jury found Nelson guilty on all counts. He filed a postconviction motion asking that the convictions for either the bail jumping or the sexual assault charges be dismissed on grounds that the latter were lesser-included offenses of the former and that conviction on all counts would constitute multiple punishment for the same act. The trial court denied the motion and Nelson appealed. Other facts will be discussed below.

## I. DOUBLE JEOPARDY

■
The Fifth and Fourteenth Amendments to the United States Constitution and Art. I, sec. 8 of the Wisconsin Constitution protect "against multiple punishments for the same offense." *State v. Gordon,* 111 Wis. 2d 133, 137, 330 N.W.2d 564, 565 (1983), quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969).

The scope of the protection turns on the meaning of the words "same offense."

> The United States Supreme Court has determined that where a court imposes multiple punishment in a single trial for violations of two or more criminal statutes arising from the same criminal conduct, the constitutionality of the multiple punishment depends on whether the state legislature intended that the violations constitute a single offense or two offenses, that is whether the legislature intended one punishment or multiple punishment. *Gordon,* 111 Wis. 2d at 137, 330 N.W.2d at 565.

If the violations constitute a single offense for which multiple punishments may be imposed, constitutional guarantees against double jeopardy are implicated. The question is primarily one of legislative intent: "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does not more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Nelson frames the inquiry in this case as whether the sexual assault charges constitute lesser included offenses of bail jumping. The supreme court has followed the analysis used in determining lesser included offenses to decide whether punishment for "linked" charges violates constitutional prohibitions against double jeopardy. *See e.g., Gordon*, 111 Wis. 2d at 141–46, 330 N.W.2d 567–70. If one charge is a lesser included offense of the other, a defendant may not be convicted and punished for both.

In deciding whether the lesser charge is included in the greater, we use the "elements only" test, which focuses on the language of the statutes defining the offenses, rather than on the charging documents or the specific facts of the case. *State v. Carrington*, 134 Wis. 2d 260, 264, 397 N.W.2d 484, 486 (1986). Under the test, "the lesser offense must be statutorily included in the greater offense and contain no element in addition to the elements constituting the greater offense." *Id.* at 265, 397 N.W.2d at 486. In simplest terms, "for one crime to be included in another, it must be 'utterly impossible' to commit the greater crime without committing the lesser." *Hagenkord v. State*, 100 Wis. 2d 452, 481, 302 N.W.2d 421,

436 (1981), quoting *Randolph v. State,* 83 Wis. 2d 630, 645, 266 N.W.2d 334, 341 (1978). The paramount inquiry is the meaning of the words of the statute. We place the statutes defining the offenses "side by side" to differentiate and compare the elements of the crimes. *Carrington,* 134 Wis. 2d at 265–66, 397 N.W.2d at 487.

If the two crimes constitute separate offenses, there is no need to proceed further with the analysis, for "cumulative punishment can presumptively be assessed after conviction for two offenses that are not the 'same' ...." *Missouri v. Hunter,* 459 U.S. at 367. If the legislative intent to "authorize[] cumulative punishment under two statutes" is clear, "a court's task of statutory construction is at an end and ... the trial court ... may impose cumulative punishment under such statutes in a single trial." *Id.* at 368–69.

The elements of bail jumping under sec. 946.49(1)(b), Stats., are that the defendant, (1) has been released from custody on bail, and (2) has intentionally failed to comply with the terms of the bail bond. The elements of second-degree sexual assault are that the defendant, (1) with the use or threat of force or violence, (2) has sexual contact or intercourse with another person (3) without that person's consent. Sec. 940.225(2)(a), Stats. The terms of the two statutes lead us to conclude that they establish distinct and separate offenses.

Nelson disagrees and argues that a contrary result is dictated by *State v. Gordon, supra,* and *Whalen v. United States,* 445 U.S. 684 (1980). We are not persuaded.

In *Gordon,* the defendant was convicted of several crimes, including kidnapping and second-degree, or

449

"felony," murder (murder committed during the commission of a felony). The court held that the double jeopardy prohibitions barred conviction and punishment for both the felony-murder and the underlying felony. Under the statutes defining the elements of those crimes, one cannot commit the offense of felony-murder without committing a felony, for one of the elements of the murder charge is that the death occur "[a]s a natural ... consequence of the commission of ... a felony." Sec. 940.02(2), Stats.

The same was true in *Whalen,* which also involved conviction for both felony-murder and the underlying felony (there a sexual assault). As in *Gordon,* the prosecutor was required to prove not only that death occurred, but also that it occurred as a consequence of the underlying felony. Again as in *Gordon,* the *Whalen* court concluded that "[a] conviction for killing in the course of a [felony] cannot be had without proving all the elements of the [felony] offense ...." *Whalen,* 445 U.S. at 693–94.

The crime of bail jumping, however, requires only an intentional failure to comply with the conditions of the bail bond, whatever those conditions might be. We agree with the state's observation that "[o]ne can fail to comply with the terms of the bond in numerous ways other than committing a felony." It is, therefore, not impossible, much less "utterly impossible," to commit the greater crime (here bail jumping) without committing the lesser (sexual assault). Sexual assault—the crime whose commission constitutes the failure to comply with the "no-crimes" provision of a bail bond—is not a lesser included offense of bail jumping because bail jumping can be committed in any number of ways without committing a crime—by violating bond provisions requiring a defendant to

stay away from witnesses, to undergo drug or alcohol treatment, or to refrain from drinking or from possessing firearms, for example.

The plain purpose of a bail jumping law is to deter those who have been released pending disposition of criminal charges from violating the conditions of their bonds.

> [T]he separate offense of bail jumping was designed and implemented by Congress in order to complement the relatively weak arsenal of the district courts in their efforts to deter bail jumping. Congress perceived the traditional sanctions of forfeiture and criminal contempt as ineffective deterrents. The separate criminal sanction was enacted with a view to aid in the deterrence of bail jumping and enhance the effective administration of justice in the courts. *United States v. Roche,* 611 F.2d 1180, 1183 (6th Cir. 1980), citing *Cong. Rec.,* 83d Cong. 2d Sess. 11295–97 (July 21, 1954).

Such violations, which have been characterized as "affront[s] to the power and dignity of the court," *id.,* are regarded as "serious offense[s]." *United States v. Cartwright,* 696 F.2d 344, 349 (5th Cir. 1983). That the Wisconsin Legislature also considers bail jumping to be a serious offense is evidenced by the provisions of sec. 946.49, Stats., making it a felony in circumstances such as those present in Nelson's case.

Bail jumping—violation of the conditions of a bond—is "a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Bloom v. Illinois,* 391 U.S. 194, 201 (1968). Because the offense "diminishes the power of a court to control those properly within its jurisdiction and afflicts the court with ... detrimental effects," it is itself made a crime. *United States v. Roche,* 611 F.2d at 1183. And

451

application of the "elements only" test satisfies us that the legislature intended second-degree sexual assault and bail jumping to be separate, separately punishable, offenses. As a result, the former is not a lesser included offense of the latter, and there is no double jeopardy violation.

But Nelson urges us to look at the statutes differently—to read them together and define the offenses in light of the specific facts of his case. So interpreted, Nelson contends that all of the elements of sexual assault are included in the bail jumping charge, and thus the former is a lesser included offense of the latter. In Nelson's view, the elements of the crime of bail jumping, as applied to him under the facts of this case, would be that, (1) while released on bail, he (2) had sexual contact or intercourse with another person (3) without that person's consent, and (4) used or threatened the use of force or violence.

The argument seems to us to reflect the analysis used in an alternative test for determining lesser included offenses, a test described as the "fact-element, pleadings or cognate" approach, and one that has been expressly rejected by the Wisconsin Supreme Court.

In *State v. Carrington, supra,* the defendant was charged with endangering safety by conduct regardless of life (a felony) and reckless use of a weapon (a misdemeanor) after he fired a shotgun in the direction of two police officers who, having seen him carrying the weapon, attempted to stop him. The elements of the felony charge were that the defendant engaged in conduct which (1) was imminently dangerous to another and (2) was of such character that it evinced a depraved mind, regardless of human life, and (3) that he endangered another's safety by such conduct. Sec.

941.30, Stats; Wis J I—Criminal 1345 (1962). Because the offense involved a weapon, the state had to prove a fourth element—that the defendant committed the crime "while possessing, using or threatening to use a dangerous weapon." Wis J I—Criminal 990 (1980). The misdemeanor count had two elements: (1) engaging in reckless conduct in the use of a firearm or other weapon; and (2) endangering another's safety by such conduct. Sec. 941.20(1)(a) and (3), Stats; Wis J I—Criminal 1321 (1969).

The court, comparing the statutes, determined that because the misdemeanor required proof of an additional element not required for the felony, namely, that the defendant's conduct in handling the weapon endangered another's safety, the misdemeanor should not be considered a lesser included offense of the felony. *Carrington,* 134 Wis. 2d at 270, 397 N.W.2d at 488–89. The defendant argued, however, that the court should look beyond the two statutes to the facts of the case—primarily to the charging documents—and rule that the facts of his case and the manner in which he was alleged to have committed the offenses established that the proof would be the same for both, and that, as a result, the misdemeanor was a lesser included offense of the felony.

The court characterized the defendant's argument as one invoking an analysis which it had uniformly rejected in the past.

> The essence of the defendant's position is that the state's charging the defendant in the accusatory pleading in this case with endangering safety by conduct regardless of life while armed, to wit, by his using a dangerous weapon, transforms the third and fourth elements of the felony into the elements of the misdemeanor and renders the

misdemeanor a lesser included offense. The defendant is in effect asking this court to modify the elements only test and adopt what commentators describe as the fact-element, pleadings or cognate approach. Under this approach, "a requested lesser offense is necessarily included in the main offense when the allegations in the accusatory pleading include all of the elements of the lesser offense."
. . .
We have declined to use ... the fact-element ... approach.

*Carrington,* 134 Wis. 2d at 272–73, 397 N.W.2d at 489–90 (citation omitted). The *Carrington* court again rejected the "fact-element" test and held that the crime of reckless use of a weapon was not a lesser included offense of endangering safety by conduct regardless of life while armed. *Id.* at 278, 397 N.W.2d at 492.

■

We reach a similar conclusion here. As we have said, the statutes setting forth the two offenses are plain in both language and effect, and the "elements only" test dictates that second degree sexual assault may not be considered a lesser included offense of bail jumping. Indeed, were it otherwise, the bail jumping statute—at least insofar as it predicates the charge upon the "no crimes" provision of the bond—would be rendered a nullity. Any conviction for the violation would have to be set aside in all cases where the defendant is also convicted of the crime committed while on bail.

Nor are we persuaded by Nelson's argument that we should consider the question in light of the specific facts surrounding the charges in this case. We see the argument as an attempt to circumvent the effect of the "elements only" rule through application of a

rationale that is virtually indistinguishable from the "fact-element" approach rejected by the supreme court in *Carrington* and earlier cases.

## II. SEVERANCE

Nelson objected to a joint trial of the T.M. and B.R. charges, contending that evidence of a threatening statement he was alleged to have made to T.M. concerning the unsolved sexual assault and murder of a woman in La Crosse County would be unduly prejudicial in the B.R. case. He also argues that the testimony of one witness was admissible in one case, but not in the other, and that because he intended to (and did) testify in one case but not in the other, the trials should have been severed to protect his right against self-incrimination. We are satisfied that the trial court did not abuse its discretion in ordering a joint trial.

Section 971.12(1), Stats., allows joinder when the crimes charged are of a "similar character" or "constitut[e] parts of a common scheme or plan." Nelson concedes that the charges in this case fit the statutory standard. He maintains, however, that the trial court should have refrained from trying the cases together under sec. 971.12(3), which authorizes severance where the defendant will be "prejudiced by a joiner of crimes."

Whether to sever otherwise properly joined charges on grounds of prejudice is within the trial court's discretion, and in making its decision the trial court must balance any potential prejudice to the defendant against the public's interest in avoiding unnecessary or duplicative trials. *State v. Huff,* 123 Wis. 2d 397, 409, 367 N.W.2d 226, 232 (Ct. App. 1985).

We will not interfere with that decision unless the court has abused its discretion, and we will uphold the trial court's ruling if there is any reasonable basis for it. *Id.*

■

Nelson argues first that the trial court abused its discretion because joinder allowed "extremely prejudicial evidence," which he asserts was admissible only in one case, to come before the single jury hearing both cases. However, he offers no citation to the trial transcript where such evidence may be found, nor does he describe it in any detail. Indeed, his only reference to the evidence is to a transcript of the preliminary hearing—and he is not challenging the bindover on this appeal. Normally, we do not consider undeveloped or deficient arguments. *State v. Beno*, 99 Wis. 2d 77, 91, 298 N.W.2d 405, 413 (Ct. App. 1980).

Even so, the argument centers on the "grisly" and "extremely inflammatory" nature of the evidence. In the T.M. case, the victim testified that Nelson stated to her "Do you remember what happened to Terry Dolowy?" When asked who Terry Dolowy was, the witness replied that she was a young La Crosse area woman who "had been raped and tortured and burned and ... decapitated" a year or so earlier. We have located only one other brief reference to the "Do you remember Terry Dolowy" remark later in the transcript.

■

The trial court instructed the jury—a jury selected in Milwaukee in order to avoid any possible prejudice from La Crosse jurors' familiarity with the "Terry Dolowy case"—that Nelson had "absolutely nothing to do with the death and disappearance and eventual finding of the body of [Terry Dolowy]." We

believe these two actions—selecting and sequestering an out-of-town jury and delivering a curative instruction—dissipated any possible prejudice that might have resulted from admission of the brief references to the earlier murder.

Nelson also argues that the trial court's joinder ruling opened the door to prejudicial testimony from one of the witnesses in the T.M. case. The witness placed Nelson at the scene of the T.M. assault by stating that she had engaged in sexual relations with him at the party T.M. was leaving when she (T.M.) was assaulted. Nelson argues that the court abused its discretion in failing to order severance so that this testimony could be kept from the jury in its consideration of the B.R. case. But he never sought severance on this ground prior to trial and, when the witness's testimony was offered, he failed to renew his earlier severance motion. As a result, he waived any error and we need not consider the argument further. *State v. Gollon,* 115 Wis. 2d 592, 604, 340 N.W.2d 912, 917 (Ct. App. 1983).

Finally, Nelson contends that his request for severance should have been granted based upon his stated desire to testify in one of the cases, but not the other. He cites *Cross v. United States,* 335 F.2d 987 (D.C. Cir. 1964), in support of his argument that he was prejudiced by having to elect between not testifying at all and testifying only to one set of charges. It has been said, however, that arguments based on *Cross* "usually fail." 1 Wright, *Federal Practice and Procedure: Criminal 2d,* sec. 222, at 785 (1982). And, in *Baker v. United States,* 401 F.2d 958, 976 (D.C. Cir. 1968), *cert. denied,* 400 U.S. 965 (1970), the same court that decided *Cross* stated that the case could not be

cited for the proposition that "'a timely ... election by the accused to testify as to some counts and not as to others requires ... severance.'" The *Baker* court went on to hold that:

> [N]o need for a severance exists until the defendant makes a convincing showing that he [or she] has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information ... to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying. [Footnotes omitted.]

*Id.* at 977. The Wisconsin Supreme Court has adopted this rule. *See Holmes v. State,* 63 Wis. 2d 389, 398 n. 12, 217 N.W.2d 657, 662 (1974).

We are again hampered by the fact that Nelson's argument is largely undeveloped. In any event, he has, in the words of *Baker,* failed to show either that he had "important testimony to give" in one case, or a "strong need to refrain from testifying" in the other. We will not speculate whether he could have made such a showing.

The trial court properly exercised its discretion in refusing to sever for trial the T.M. and B.R. assaults. Every effort was made to insure that Nelson was provided a fair trial, free of prejudice. We affirm.

*By the Court.*—Judgment and order affirmed.