STATE of Wisconsin, Plaintiff-Respondent,

v.

Alvin DAWSON, Defendant-Appellant.

Court of Appeals

*No. 94–2570–CR. Submitted on briefs May 3, 1995.—Decided June 6, 1995.*

(Also reported in 536 N.W.2d 119.)

For the defendant-appellant the cause was submitted on the briefs of *Brian Findley*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *E. Michael McCann*, district attorney, and *William E. Hanrahan*, assistant district attorney.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J. Alvin Dawson appeals from a judgment of conviction, after a jury trial, for one count of committing a bomb scare, as a habitual criminal, contrary to §§ 947.015 and 939.62, STATS.; one count of unlawful use of a telephone, contrary to § 947.012, STATS.; and one count of bail jumping, contrary to § 946.49(1)(a), STATS. He also appeals from an order denying his motion for postconviction relief. Dawson's sole claim of error arises out of his conviction for bail jumping. He alleges that there was insufficient evidence to support the jury's verdict finding him guilty of bail jumping because: (1) he was released from custody without bail; and (2) there was no evidence presented to the jury proving that he was either released on a bond, or that he intentionally violated the terms of a bail bond.

We agree that there was insufficient evidence to support the bail jumping conviction.[1] Before a defendant may be convicted of bail jumping under

---

[1] This case was originally scheduled as a one-judge appeal. *See* § 752.31, STATS. Pursuant to our order of March 9, 1995, the

§ 946.49(1), STATS., the State must prove by evidence beyond a reasonable doubt the following three elements: first, that the defendant was either arrested for, or charged with, a felony or misdemeanor; second, that the defendant was released from custody on a bond, under conditions established by the trial court; and third, that the defendant intentionally failed to comply with the terms of his or her bond, that is, that the defendant knew of the terms of the bond and knew that his or her actions did not comply with those terms. *See infra* note 7 and accompanying text. It is undisputed that Dawson was released from custody without bail, and the record is devoid of any evidence that Dawson executed either a secured or unsecured bond before his release. Thus, there was insufficient evidence to support two elements of the charged offense of bail jumping. Accordingly, while we affirm Dawson's convictions for committing a bomb scare and unlawful use of a telephone, we must reverse his conviction for bail jumping and remand the matter to the trial court. Upon remand the trial court shall vacate the jury's finding of guilt on the bail jumping charge, dismiss that charge with prejudice, and correct the sentences on the remaining two counts to reflect our resolution of the bail jumping charge.

## I. BACKGROUND

On June 14, 1993, Dawson telephoned the City of Milwaukee Keenan Health Center and stated that he had placed a bomb in the building and that the Center was going to "burn up." On June 16, 1993, Dawson telephoned the City of Milwaukee Health Department

case was assigned to a three-judge panel for resolution. *See* § 809.41(3), STATS.

and made threatening statements, intimating that his estranged wife was going to be injured. At the time he placed the calls, Dawson had been released from police custody, without bail, in a pending misdemeanor case of attempted theft by fraud.

The State charged Dawson with committing the bomb scare and unlawful use of a telephone. The State further charged Dawson with bail jumping, stating in the amended complaint that Dawson, "having been released from custody under Chapter 969 of the Wisconsin Statutes, did intentionally fail to comply with the terms of his bond, contrary to Wisconsin Statutes section 946.49(1)(a)." The State alleged "that it is a condition of bail in all cases in the State of Wisconsin pursuant to Chapter 969 that the defendant commit no further crimes while out on bail." Thus, the State argued that when Dawson made the bomb scare, he violated a condition of his release from custody. A jury convicted Dawson of all three counts. The trial court entered judgment and sentenced him to seven years of incarceration for committing the bomb scare; nine months for bail jumping, consecutive to the bomb scare sentence; and ninety days for unlawful use of a telephone, consecutive to the bail jumping sentence. Dawson's postconviction challenge to the bail jumping charge was denied.

## II. ANALYSIS

Dawson contends that the jury's finding of guilt on the bail jumping charge must be set aside because the State failed to prove two elements of the offense—the existence of a bond, and the intentional violation of the conditions of that bond. Because no bond existed, Dawson argues that no violation of the conditions of a bond could occur and, thus, the jury's finding of guilt had no

166

factual substrate. The State counters that as a condition of Dawson's release under § 969.02, STATS., he agreed not to commit any crimes. Accordingly, the State argues that when Dawson made the bomb scare, he violated a condition of his release and therefore violated the bail jumping statute, irrespective of whether he was released without bail or on a formal bond. The State is incorrect.

■■■■

Our resolution of this appeal requires us to construe § 946.49(1), STATS., which reads:

> **Bail jumping.** **(1)** Whoever, having been released from custody under ch. 969, intentionally fails to comply with the terms of his or her bond is:
> (a) If the offense with which the person is charged is a misdemeanor, guilty of a Class A misdemeanor.
> (b) If the offense with which the person is charged is a felony, guilty of a Class D felony.

Our review is *de novo. State v. Dwyer,* 181 Wis. 2d 826, 836, 512 N.W.2d 233, 236 (Ct. App. 1994) (construction of a statute presents a question of law, subject to *de novo* review on appeal). "Statutory analysis begins with an examination of the language of the statute itself to determine whether the language is clear or ambiguous." *Id.* It is a long-standing rule of statutory construction that "[w]here the meaning of a statute is plain, it is the duty of the courts to enforce it according to its obvious terms." *Thornley v. United States,* 113 U.S. 310, 313 (1885); *see, e.g., State v. Smith,* 184 Wis. 664, 668, 200 N.W. 638, 640 (1924). "In such a case there is no necessity for construction." *Thornley,* 113 U.S. at 313.

■ The language of § 946.49(1), STATS., is unambiguous: defendants can only be convicted of bail jumping under this subsection if they "intentionally fail[ ] to comply with the terms of [their] bond." Therefore, the express language of the statute requires that defendants must be under a bond before they can "fail[ ] to comply" with the terms of that bond.

Section 967.02(4), STATS., defines " 'bond' " as "an undertaking either secured or unsecured entered into by a person in custody by which the person binds himself or herself to comply with such conditions as are set forth therein."[2] The State argues that a defendant released without bail under § 969.02(1), STATS.,[3] is subject to the condition under § 969.02(4), STATS., which provides that "a person released under [§ 969.02] shall not commit any crime." The State further argues that when a defendant is released under this "condition," the defendant has "entered into an unsecured' under-

---

[2] Section 967.02, STATS., specifically defines the term "bond" only with respect to its use in Chapters 967 to 979, STATS. *See* § 967.02, STATS. Because § 946.49(1), STATS., cross-references Chapter 969, however, we conclude that the term "bond" has the same meaning as that defined by § 967.02(4), STATS. *See State v. Robertson*, 174 Wis. 2d 36, 43, 496 N.W.2d 221, 224 (Ct. App. 1993) (stating that whenever possible, court of appeals will construe "interrelated statutes to 'produce a harmonious whole' " (citation omitted)).

[3] Section 969.02(1) & (4), STATS., provides:

**Release of defendants charged with misdemeanors. (1)** A judge may release a defendant charged with a misdemeanor without bail or may permit the defendant to execute an unsecured appearance bond in an amount specified by the judge.

. . . .

(4) As a condition of release in all cases, a person released under this section shall not commit any crime.

taking' by which [the defendant] has bound himself [or herself] to comply with the terms of his release." We are not persuaded by the State's argument.

While the term "undertaking" is not defined in § 967.02(4), STATS., "the common and approved meaning of a nontechnical word may be determined by reference to a recognized dictionary." *State v. White,* 180 Wis. 2d 203, 214, 509 N.W.2d 434, 437 (Ct. App. 1993). BLACK'S LAW DICTIONARY 1526 (6th ed. 1990), defines "undertaking" as "[a] promise, engagement, or stipulation." Accordingly, under the State's proposed application, a defendant who is released without bail under § 969.02(1), STATS., solely by the operation of the condition set forth in § 969.02(4), STATS., would have entered into a promise or engagement equal to that of a secured bail bond or unsecured appearance bond.

The State's interpretation untenably blurs the distinction between cases where a defendant is released without any bail and cases where a defendant is released after execution of a secured or unsecured bond. Under § 969.02(1), STATS., the legislature unambiguously provided the trial court with two[4] methods to release a misdemeanant: (1) the trial court may either release the misdemeanant without bail,[5] or (2) the trial court may permit the misdemeanant to execute an unsecured appearance (personal recognizance) bond. The State is correct that under both methods of release there is a "condition of release," that the misdemean-

---

[4] These two methods, of course, are in addition to the possibility of a trial court releasing a misdemeanant after imposing bail pursuant to § 969.01, STATS.

[5] Under Chapter 969, STATS., " 'bail' " "means monetary conditions of release." Section 969.001, STATS.

ant "shall not commit any crime," *see* § 969.02(4), STATS.; however, Chapter 969, STATS., does not provide any criminal penalties for failing to comply with the conditions of release.[6] Only § 946.49, STATS., defines such a crime, and this statute specifically calls for the existence of a "bond." If the legislature intended to criminalize the actions of a defendant released without bail, it would have explicitly drafted § 946.49(1), STATS., to include such situations. Instead, the legislature has clearly criminalized only the actions of a defendant who is released under a secured bail bond or unsecured appearance bond, and then "fails to comply with the terms of [that] bond." Section 946.49(1), STATS. Such terms would include, *inter alia*, the condition that the defendant "shall not commit any crime." Section 969.02(4), STATS.

Thus, before a defendant may be found guilty of the offense of bail jumping under § 946.49(1), STATS., the State must prove by evidence beyond a reasonable doubt the following three elements: first, that the defendant was either arrested for, or charged with, a felony or misdemeanor; second, that the defendant was released from custody on a bond, under conditions established by the trial court; and third, that the defendant intentionally failed to comply with the terms of his or her bond, that is, that the defendant knew of the terms of the bond and knew that his or her actions did

[6] Section 969.08(2), STATS., does provide that "[v]iolation of the conditions of release or the bail bond constitutes grounds for the court to increase the amount of bail or otherwise alter the conditions of release or, if the alleged violation is the commission of a serious crime, revoke release under this section."

not comply with those terms. *See* WIS J I—CRIMINAL 1795.[7]

[7] The 1994 revision of WIS J I—CRIMINAL 1795 supports our interpretation of § 946.49(1), STATS. The previous version of the uniform jury instruction required only that the defendant be "released from custody under conditions" instead of "released from custody on bond." WIS J I—CRIMINAL 1795, cmt., n.1. As noted by the Committee comments following the new jury instruction:

> The statute [§ 946.49(1), STATS.] refers to "released from custody under Chapter 969." The Committee concluded that the offense is committed only by someone who violates a "term of his bond." Persons may be released under Chapter 969 without a bond being required. Thus, it is logical to limit the instruction to situations where release is "on bond."

*Id*. The jury in the case at bar was instructed under the previous jury instructions. Accordingly, as our analysis in the body of our opinion shows, these instructions did not properly state the law.

Further, we must clarify and harmonize our conclusion in this case with two prior decisions of this court. In both *State v. Harris,* 190 Wis. 2d 719, 528 N.W.2d 7 (Ct. App. 1994), and *State v. Nelson,* 146 Wis. 2d 442, 432 N.W.2d 115 (Ct. App. 1988), we provided variant statements of the elements of bail jumping under § 946.49(1), STATS. In *Harris*, we stated that the elements of bail jumping were "(1) that the defendant has been arrested for or charged with a misdemeanor; (2) that the defendant has been released on bail, subject to conditions; and (3) that the defendant has intentionally failed to comply with the conditions of release." *Harris*, 190 Wis. 2d at 724, 528 N.W.2d at 8. In *Nelson*, we stated that the elements were "that the defendant, (1) has been released from custody on bail, and (2) has intentionally failed to comply with the terms of the bail bond." *Nelson*, 146 Wis. 2d at 449, 432 N.W.2d at 118. In both cases, however, the defendants were released on bail, and thus in neither case did we face the situation present in the case at bar. Accordingly, while our declaration of the elements of § 946.49 (1), STATS., in *Harris* and *Nelson* may have adequately stated

171

 With this analysis of § 946.49(1), STATS., in mind, we now address Dawson's specific contention that the evidence presented to the jury was insufficient to support his conviction for bail jumping. As recently stated by our supreme court: "The Due Process Clause of the Fourteenth Amendment places upon the prosecution in state criminal trials, the burden of proving all elements of the offense charged, and the burden of proving 'beyond a reasonable doubt' every fact necessary to establish those elements." *State v. Avila,* 192 Wis. 2d 870, 886, 532 N.W.2d 423, 429 (1995) (citations omitted). Our review in sufficiency-of-the-evidence challenges "is limited to determining whether the evidence, considered most favorably to the conviction, is so insufficient in probative value and force that no trier of fact acting reasonably could be convinced beyond a reasonable doubt that the elements of the charged crime have been proven." *State v. Speese,* 191 Wis. 2d 205, 211-12, 528 N.W.2d 63, 66 (Ct. App.), *petition for review granted*, 531 Wis. 2d 325 (Mar. 21, 1995).

 During its oral decision on Dawson's postconviction motion, the trial court concluded that Dawson had been released without bail in the pending misdemeanor attempted-theft-by-fraud case. The State does not dispute this conclusion on appeal. Our review of the record uncovers not one scintilla of evidence showing

---

the law for purposes of cases involving a bail bond, our statement of the elements in the present case is a more accurate reflection of the law in all cases, including those involving an unsecured appearance bond. Thus, our general statement of the elements should be used in all future cases, instead of our previous bail-specific statements of the elements set forth in *Harris* and *Nelson.*

that Dawson executed a bond prior to his release in that pending misdemeanor case. Accordingly, there was no evidence presented to the jury from which it could reasonably conclude that Dawson was both released from custody on a bond, under conditions established by the trial court, and that he intentionally failed to comply with the terms of his bond. *See id.* As a result, the State did not prove beyond a reasonable doubt two of the elements of the bail jumping charge, and we must reverse and remand that portion of Dawson's judgment of conviction. Upon remand, we order the trial court to both vacate the jury's finding of guilt on the bail jumping charge and then dismiss the charge with prejudice. We affirm the judgment of conviction with respect to the bomb scare and unlawful use of a telephone charges. We also order the trial court to correct Dawson's sentence as to the two remaining counts in light of our resolution of his bail jumping conviction.

*By the Court.*—Judgment and order affirmed in part, reversed in part, and cause remanded with directions.