In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2809

DEMETRIUS M. BOYD,

*Petitioner-Appellant,*

*v.*

GARY A. BOUGHTON,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 12 C 388 — **William E. Callahan, Jr.**, *Magistrate Judge.*

ARGUED APRIL 22, 2015 — DECIDED AUGUST 14, 2015

Before POSNER and KANNE, *Circuit Judges*, and DARRAH, *District Judge*.*

KANNE, *Circuit Judge*. Appellant Demetrius M. Boyd has filed a petition for a writ of habeas corpus. He claims that he is being detained in violation of federal law—specifically, the

* The Honorable John W. Darrah, of the United States District Court for the Northern District of Illinois, sitting by designation.

Double Jeopardy Clause of the Fifth Amendment. The district court denied Boyd's petition, and he appeals pursuant to a certificate of appealability. For the reasons below, we affirm the district court's denial of the petition.

## I. BACKGROUND

Boyd was arrested on criminal charges and released from jail pursuant to a bond agreement. Boyd was subject to a number of bond conditions, including that he not engage in any criminal activity. While on release, however, Boyd was arrested and charged in Wisconsin state court with ten counts, including three counts of armed robbery with the threat of force; being a felon in possession of a firearm; possessing a short-barreled shotgun; taking a vehicle without the owner's consent by the use of a dangerous weapon; battery; unlawfully and intentionally pointing a firearm at another person; operating a vehicle without the owner's consent; and resisting or obstructing a law enforcement officer.

Pursuant to Wisconsin Statute § 946.49, which makes "bail jumping" a felony offense, the state charged Boyd in the same proceeding with ten counts of bail jumping: it charged one bail-jumping count for each of the underlying substantive offenses that Boyd allegedly committed while on bond. A jury convicted Boyd on all twenty counts, and he was sentenced to over forty years' imprisonment.

Boyd appealed. Among other arguments, he contended that he was being punished for both bail jumping and the substantive offenses in violation of the Double Jeopardy Clause of the Fifth Amendment. The Wisconsin Court of Appeals rejected his double-jeopardy argument and af-

firmed his convictions. Boyd then appealed to the Supreme Court of Wisconsin, which denied his petition for review.

Having exhausted his state remedies, Boyd filed a petition for a writ of habeas corpus in the Eastern District of Wisconsin. Among other claims, he raised the same double-jeopardy argument that he had pursued in state court. The district court denied his petition but granted a certificate of appealability on the double-jeopardy issue.

Boyd appeals the denial of his writ of habeas corpus.

## II. ANALYSIS

In short, Boyd argues that his bail-jumping and underlying offenses constituted the "same offense" under the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution. He argues that, as a result, he may not be lawfully punished for both. He claims that the state court's opposite conclusion constituted a decision contrary to clearly established federal law, rendering him eligible for habeas relief.

### A. Standard of Review

Our review of Boyd's claim is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). In order to obtain relief, Boyd must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) (per curiam). And he must show that his detention was the result of a state court decision that was (1) "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable de-

termination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Boyd invokes here the first of those requirements—that his detention is the result of a state court decision that is contrary to clearly established federal law. The relevant state court decision is that of the last state court to address the claim on the merits. *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003).

A state court decision is contrary to Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citing *Green v. French*, 143 F.3d 865, 869–70 (4th Cir. 1998)). A decision applying the correct legal rule to the facts of a case is not "contrary to" within the meaning of § 2254(d)(1). *Williams*, 529 U.S. at 406. Additionally, a state court decision is not unreasonable simply because the court applied federal law incorrectly. *Id.* at 410 ("For purposes of today's opinion, the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

We review the district court's findings of fact for clear error and its legal conclusions *de novo*. *Rizzo v. Smith*, 528 F.3d 501, 505 (7th Cir. 2008).

*B. The Supreme Court's Double-Jeopardy Jurisprudence*

Boyd's claim rests on the Supreme Court's double-jeopardy jurisprudence, which he says the Wisconsin state court misapplied. So we begin by discussing at some length

the twists and turns of the Supreme Court's interpretation and application of the Double Jeopardy Clause.

*1. Double Jeopardy Basics*

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. While this provision may appear straightforward, its meaning and application have long been the subjects of debate and changing legal standards. Commentators have called the Supreme Court's double-jeopardy jurisprudence (among other unflattering descriptions) full of "double talk" and "double takes,"[1] lacking a "cogent analysis,"[2] and "just about as far removed from a model of logical and conceptual clarity as it is possible to be."[3] Without endorsing any of those descriptions, we must admit that the Court's jurisprudence is complicated and often unclear. Indeed, as we discuss later, that is one of the reasons why Boyd's claims fail.

As the Supreme Court has interpreted it, the Double Jeopardy Clause envisions three ways in which a defendant may be "twice put in jeopardy of life or limb": (1) a subsequent prosecution after an acquittal; (2) a subsequent prosecution after a conviction; and (3) being twice punished for

---

[1] Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L. J. 1807, 1807-08 (1997).

[2] Peter Henning, *Precedents in a Vacuum: The Supreme Court Continues to Tinker with Double Jeopardy*, 31 Am. Crim. L. Rev. 1, 3 (1993).

[3] Ronald J. Allen, Bard Ferrall & John Ratnaswamy, *The Double Jeopardy Clause, Constitutional Interpretation and the Limits of Formal Logic*, 26 Val. U. L. Rev., 281, 281-82 (1991).

the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The type of jeopardy at issue in this case is the third, which we will refer to as the "multiple-punishment" line of cases.

### 2. *The* Blockburger *Test*

Our starting point is *Blockburger v. United States*, 284 U.S. 299 (1932). In that case, Harry Blockburger was convicted of multiple counts of violating a federal narcotics statute. Among other charges, he was convicted of selling "ten grains" of a narcotic drug to a specific purchaser (Count 2), and then selling "eight grains" of the same drug to the same purchaser on a different day (Count 3). Blockburger claimed that the conduct underlying Count 3 was merely a continuation of the conduct in Count 2—this was one single drug deal. He argued, therefore, that those counts were actually the *same offense*, for which he could not lawfully be punished twice.

To determine the application of the Double Jeopardy Clause, the Court had to decide when two criminal charges actually constituted the "same offense." It laid out what came to be known as the "same-elements" or *Blockburger* test. That test asks whether each offense requires an element that is not required by the other: if not, then the two are the "same offense." *See Blockburger*, 284 U.S. at 304 ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact of which the other does not."). Put differently, if Statute 1 requires an element that Statute 2 does not; and Statute 2 requires an element that Statute 1 does not, then the statutes constitute different of-

fenses. Otherwise, they are the same offense for *Blockburger* purposes.

### 3. *The Short-Lived* Grady *Test*

In 1990, the Supreme Court revisited the *Blockburger* test in *Grady v. Corbin*, 495 U.S. 508 (1990). In that case, the Court held that in the context of *successive prosecutions*, the Double Jeopardy Clause required one further layer of analysis. The Court held that a successive prosecution "must do more than merely survive the *Blockburger* test." *Grady*, 495 U.S. at 521. In addition, "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will *prove conduct that constitutes an offense* for which the defendant has already been prosecuted." *Id.* (emphasis added).

This was, in effect, a "same conduct" test. Two offenses could pass the *Blockburger* test, because each offense contained an element that the other did not, but still fail under *Grady*. The Court noted, however, that the *Blockburger* test had been developed in the *multiple-punishment* context, and it appeared to assume that *Blockburger* would continue to be the test applied in such cases.[4]

*Grady*, however, was short-lived. In 1993, just three years after it decided that case, the Supreme Court abandoned *Grady*'s same-conduct test for subsequent-prosecution claims. And it reinstituted *Blockburger* as the test applicable

---

[4] We concluded the same. *See, e.g., United States v. Hartmann*, 958 F.2d 774, 792 (7th Cir. 1992) (applying *Blockburger* analysis to post-*Grady* multiple sentencing case).

to all varieties of double-jeopardy cases. It did so in *United States v. Dixon*, a fragmented, plurality opinion. 509 U.S. 688 (1993). We need not detail the Court's reasoning in jettison-ing *Grady*—we describe *Grady*'s brief existence only to set the stage for the Court's opinion in *Dixon*.

*4.* Blockburger *Applied to Lesser-Included Offenses:* Harris *and* Dixon

In addition to overturning *Grady* and reinstituting *Block-burger*, the *Dixon* Court took up another issue: how to apply *Blockburger's* "same elements" test when one of the offenses looks like a "lesser-included offense" of the other.

The lesser-included-offense story begins with *Harris v. Oklahoma*, 433 U.S. 682 (1977) (per curiam). In that case, de-fendant Thomas Harris killed a grocery store clerk during the commission of a robbery. Harris was convicted of felony-murder, and in a later prosecution was also convicted of the underlying robbery. Harris appealed his robbery conviction, arguing that it was barred by the Double Jeopardy Clause. The Oklahoma Court of Criminal Appeals affirmed his con-viction, but acknowledged that "[i]n a felony murder case, the proof of underlying felony [here robbery with firearms] is needed to prove the intent necessary for a felony murder conviction." *Harris*, 433 U.S. at 682 (citation omitted) (brack-ets in original).

The Supreme Court reversed. It determined that "[w]hen, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with fire-arms, the Double Jeopardy Clause bars prosecution for the lesser crime, after conviction of the greater crime." *Id.* The Court concluded that the two crimes failed the "same-

elements" test, so the Double Jeopardy Clause barred a subsequent prosecution for robbery. Subsequent cases, such as *Whalen*, applied the same analysis. *Whalen v. United States*, 445 U.S. 684 (1980).

Now enter *Dixon*, a consolidated case involving two defendants. The first defendant, Alvin Dixon, had been arrested in the District of Columbia and was released on bond. Dixon's bond agreement stated that he was not to commit "any criminal offense." *Dixon*, 509 U.S. at 691. It also stated that any violation of the conditions of his release would subject him "to revocation of release, an order of detention, and prosecution for contempt of court." *Id.* While out on bond, Dixon was arrested and indicted for possession of cocaine with intent to distribute, in violation of D.C. law.

Before any proceedings regarding the cocaine indictment, the D.C. court held a hearing, requiring Dixon to show cause as to why he should not be held in contempt. The court concluded that the government had "established beyond a reasonable doubt that [Dixon] was in possession of drugs and that those drugs were possessed with the intent to distribute." *Id.* at 691 (brackets in original).

The court found him guilty of criminal contempt. Dixon then moved to dismiss the cocaine indictment on double-jeopardy grounds, and the court granted his motion. The District of Columbia Court of Appeals, relying on (then-controlling) *Grady*, agreed that Dixon's subsequent prosecution was barred by the Double Jeopardy Clause.

The second defendant, Michael Foster, was subject to a civil protection order obtained by his estranged wife, Ana. The order required that he not "molest, assault, or in any

manner threaten or physically abuse" her. Over the next eight months, Ana filed three motions to have her husband held in contempt of the order. She alleged, among other claims, that Foster threatened her on three occasions and physically assaulted her twice.

The D.C. court held a three-day bench trial on the contempt issue. In order to prove contempt, the court stated that Ana would have "to prove as an element, first that there was a Civil Protection Order, and then [that] … the assault as defined by the criminal code, in fact occurred." *Id.* at 693 (brackets in original). The court found Foster guilty of the physical assaults but acquitted him on the threat allegations.

The government later obtained an indictment charging Foster with, among other counts: threatening to injure another for the three threats (for which he had been acquitted of contempt); simple assault for one of the physical assaults (for which he had been found guilty of contempt); and assault with intent to kill for the other physical assault (for which he had been found guilty of contempt). Foster filed a motion to dismiss, based on double jeopardy, and the trial court denied his motion. Foster appealed, and as in Dixon's case, the District of Columbia Court of Appeals held that Foster's subsequent prosecutions were barred by the Double Jeopardy Clause. The cases were consolidated and appealed to the Supreme Court.

The question before the Supreme Court was whether the subsequent prosecutions of Dixon and Foster violated the Double Jeopardy Clause. After overturning *Grady*, the majority of the Court applied *Blockburger*. The Court divided, however, as to how *Blockburger* would apply to those subsequent prosecutions. Seven of the justices looked to the

Court's "lesser-included-offense" jurisprudence as the most pertinent authority. But the fractured court then veered in multiple directions.

Justice Scalia, joined by Justice Kennedy, concluded that a subsequent prosecution of Dixon would violate the Double Jeopardy Clause. He concluded that the drug charge constituted a sort of lesser-included-offense to the contempt crime:

> [T]he 'crime' of violating a condition of release cannot be abstracted from the 'element' of the violated condition. The *Dixon* court order incorporated the entire governing criminal code in the same manner as the *Harris* felony-murder statute incorporated the several enumerated felonies. Here, as in *Harris*, the underlying substantive criminal offense is 'a species of lesser-included offense.'"

*Id.* at 698 (citations omitted). He also concluded that Foster could not be subsequently prosecuted for simple assault because the civil protection order required him not to "assault" his wife. *Id.* at 700. This amounted to simple assault being a lesser-included offense of contempt.

But, Justice Scalia concluded, Foster's other charges *did not* constitute lesser-included offenses of Foster's contempt conviction. *Id.* at 700. In short, they passed the *Blockburger* test: each substantive offense had an element that the protection order did not, and the protection order had an element that each substantive offense did not. As for assault with intent to kill, it required proof of the specific intent to kill, which the protection order did not; and the protection order required that Foster have knowledge of the protection order, which assault with the intent to kill did not. *Id.* at 701–02. The same was true of the threat charges. *Id.*

Justice White, joined by Justice Stevens in relevant part, also concluded that the lesser-included-offense analysis barred Dixon's subsequent prosecution and Foster's subsequent prosecution for simple assault. *Id.* at 733 (White, J., concurring in the judgment in part and dissenting in part). Unlike Justice Scalia, however, Justice White concluded that the Double Jeopardy Clause barred *all* of the charges brought against Foster, based on an application of the *Blockburger* same-elements test. *Id.* Justice White faulted Justice Scalia for an overly formalistic focus approach to applying *Blockburger*, concluding that "[t]he distinction drawn by Justice SCALIA is predicated on a reading of the Double Jeopardy Clause that is abstracted from the purposes the constitutional provision is designed to promote." *Id.* at 735.

Chief Justice Rehnquist, joined by Justices O'Connor and Thomas, concluded that *none* of the criminal prosecutions against Dixon or Foster were barred under *Blockburger. Id.* at 713 (Rehnquist, C.J., concurring in part and dissenting in part). The Chief Justice rejected Scalia's reading of *Harris,* that the elements of a lesser-included offense are "incorporated" into the greater offense, for purposes of double-jeopardy analysis. Instead, he concluded, one most look only at the crime of contempt and the elements it explicitly lists. Contempt of court, he stated, comprises two elements: "(i) a court order made known to the defendant, followed by (ii) willful violation of that order." *Id.* at 716. On its face, the crime of contempt has different elements than the substantive criminal charges at issue. Therefore, he concluded, the statutes all passed the *Blockburger* test. *Id.* at 713.

Justice Blackmun concluded that the interests served by the contempt mechanism "are fundamentally different from

those served by the prosecutions of violations of the substantive criminal law." *Id.* at 743 (Blackmun, J., concurring in the judgment in part and dissenting in part). He stated that the purpose of contempt was not to punish any offense against the community, but instead to punish the specific act of disobeying a court order. *Id.* at 742. Because of those fundamentally different purposes, he concluded that neither Foster nor Dixon had been "subject for the same offence to be twice put in jeopardy of life or limb." *Id.* at 743.

And finally, Justice Souter concluded that the Double Jeopardy Clause barred subsequent prosecutions against both Dixon and Foster on all counts. *Id.* at 744 (Souter, J., concurring in the judgment in part and dissenting in part). His analysis, however, focused on his stance that *Grady* should remain in force, and that *Harris* should be interpreted in light of *Grady.*

*Harris* and *Dixon* illustrate how the Supreme Court analyzes double-jeopardy claims when faced with lesser-included offenses. Although they were both multiple-prosecution cases, it is a fair inference that the Court would employ the same analysis in a multiple-punishment case like this one, for the same *Blockburger* test applies in both contexts.

*5. The Two-Part Test for Multiple Punishments in the Same Proceeding*

But, at least in the multiple-punishment context, the *Blockburger* test is not the end of the story. When the government seeks to impose cumulative punishments *in the same proceeding*, the Court has concluded that statutes can fail the *Blockburger* test and still not run afoul of the Double Jeop-

ardy Clause.[5] According to the Supreme Court, "simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

Instead, the Court concluded that when multiple punishments are imposed in a single proceeding, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing *greater punishment than the legislature intended.*" *Id.* at 366 (emphasis added). So, in such cases, the *Blockburger* test is effectively a "rule of statutory construction." *See Whalen*, 445 U.S. at 691. A court must assume that the legislature "ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,'

---

[5] Most multiple-punishment cases arise when charges that might result in cumulative punishment are brought in the same proceeding. But it is possible for multiple-punishment scenarios to arise in successive proceedings. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (where defendant successfully challenged his conviction while serving his prison term. When he was subsequently retried and convicted of the same offense, the Court held that he must be given "credit" for the time he had already served. To do otherwise would be to punish him twice for the same offense.). The Court has made clear that the Double Jeopardy Clause outright forbids multiple punishments for a single offense only when those punishments are imposed in successive proceedings. *See Hudson v. United States,* 522 U.S. 93, 99 (1997) (citing *Hunter*, 459 U.S. at 366). So in those cases, the *Blockburger* test is the beginning and the end of the analysis: if the *Blockburger* test indicates that the offenses at issue are the same, then multiple punishments may not be imposed.

they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Whalen*, 445 U.S. at 691–92. But if the legislature *clearly indicated* that it intended cumulative punishment, then the Double Jeopardy Clause does not prohibit multiple-punishment. *Id.*

Thus, in order to determine whether multiple punishments in a single proceeding violate the Double Jeopardy Clause, a court must engage in a two-step analysis: first, it must evaluate the statutes at issue by applying the *Blockburger* test. If the statutes pass *Blockburger* (i.e., if they are different offenses), then there is no double-jeopardy violation. But if the statutes fail *Blockburger*, then the court must look to whether the legislature nevertheless clearly intended for the statutes to apply simultaneously and impose cumulative punishment.

That concludes our discussion of the Supreme Court's relevant double-jeopardy jurisprudence. We next evaluate how the Wisconsin courts have applied that jurisprudence in the context of "bail jumping" generally and to Boyd's case specifically.

*C. Double Jeopardy and Bail Jumping in Wisconsin*

Wisconsin law makes bail jumping, under certain circumstances, a felony offense. Bail jumping includes more than a defendant's failure to appear for a court date; it encompasses any acts that constitute noncompliance with the terms of a defendant's bond agreement. Wis. Stat. § 946.49 provides that:

(1) Whoever, having been released from custody under ch. 969, intentionally fails to comply with the terms of his or her bond is:

(a) If the offense with which the person is charged is a misdemeanor, guilty of a Class A misdemeanor.

(b) If the offense with which the person is charged is a felony, guilty of a Class H felony.

(2) A witness for whom bail has been required under s. 969.01(3) is guilty of a Class I felony for failure to appear as provided.

We note that the "offense" referenced in subsections (a) and (b) is the offense for which the defendant was originally arrested and on release—not the violation that is alleged during the release period. As we understand it, the commission of a crime while on release will virtually always constitute a failure to comply with the terms of a defendant's bond, because a standard bond term is that the defendant "shall not commit any crime." *See, e.g.*, Wisconsin Court Form (Criminal) CR-203, Bail/Bond.

The Court of Appeals of Wisconsin (the state's intermediate appellate court) considered a double-jeopardy challenge to the operation of § 946.49 in *State v. Nelson*, 432 N.W.2d 115 (Wis. Ct. App. 1988). In that case, defendant Eugene Nelson had been released on bond, subject to the condition that he not commit any crimes. He was subsequently arrested and charged with two counts of sexual assault while on release. The state, pursuant to § 946.49, added one count of bail jumping to each of his sexual assault charges and prosecuted both the bail jumping and the substantive offenses in the

same proceeding. A jury convicted Nelson on all counts. *Id.* at 116–17.

Nelson challenged his convictions for sexual assault on double-jeopardy grounds, arguing that he was being twice punished for the same offense. He argued that the sexual assault charges constituted lesser-included offenses of bail jumping. To determine whether bail jumping and sexual assault constituted the "same offense," the court applied a version of the *Blockburger* test, adopting a formulation that had developed under Wisconsin state law: "the lesser offense must be statutorily included in the greater offense and contain no element in addition to the elements constituting the greater offense." *Id.* at 118. The court stated, "[i]n simplest terms, it must be utterly impossible to commit the greater crime without committing the lesser." *Id.*

To commit bail jumping, the court explained, the defendant must only have (1) been released from custody on bail; and (2) intentionally failed to comply with the terms of the bond. *Id.* And to commit sexual assault, the defendant must (1) with the use of threat or violence; (2) [have] sexual contact or intercourse with another person; (3) without that person's consent. *Id.* By the plain terms of the statutes, the court concluded, those were two separate offenses. *Id.*

Nelson argued that the U.S. Supreme Court's felony-murder cases instructed that bail jumping and sexual assault actually constituted the same offense. In those cases, Nelson argued, the felony-murder statutes did not explicitly list the elements of the underlying felony; yet the Supreme Court, in essence, "incorporated" those elements into the greater, felony-murder offense. The same, Nelson argued, should be true in his case.

The court rejected this argument. It concluded that the felony-murder statutes were distinguishable because they *required the commission of an underlying felony*. *Id.* at 119. In other words, it was "utterly impossible" to commit the greater crime, felony-murder, without committing the lesser crime, the accompanying felony. *Id.* In the case of bail jumping, however, it was possible to violate the bail-jumping statute by committing *any act* that violated the terms of the bond agreement—whether or not that act was criminal. *Id.* Therefore, the court concluded, there was no double-jeopardy violation.

The Supreme Court of Wisconsin then addressed the issue in *State ex rel. Jacobus v. State*, 559 N.W.2d 900 (Wis. 1997). In that case, the court adopted the court of appeals' conclusion in *Nelson* that bail jumping and the conduct underlying it are "distinct and separate offenses." *Jacobus,* 559 N.W.2d at 905. And it explored the legislative intent underlying § 946.49.

In *Jacobus*, defendant Alexander Jacobus had been released on bond, subject to a condition that he not consume any alcohol. He was then charged with disorderly conduct and operating a motor vehicle while intoxicated. In addition to those charges, the state added several bail-jumping counts. One of those counts was based solely on Jacobus's consumption of alcohol in violation of his no-alcohol bond condition. Jacobus pled guilty to that count.

Jacobus later filed a state writ of habeas corpus based on that "no-alcohol bond violation" conviction. He argued that Wisconsin law prohibited the state from criminally prosecuting him for the violation of his no-alcohol condition. Wisconsin Statute § 51.45 provides that "[i]t is the policy of this

state that alcoholics and intoxicated persons may not be subjected to criminal prosecution because of their consumption of alcohol beverages but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society." Wis. Stat. § 51.45.

This, Jacobus argued, prohibited the state from criminally prosecuting him for bail jumping based on the underlying consumption of alcohol. He argued that doing so would constitute criminal prosecution for the consumption of alcohol. The court of appeals agreed with Jacobus, concluding that "although the State may prohibit alcohol consumption as a condition of bail, parole, or probation, the only available penalty is revocation of the applicable status." *Id.* at 902.

The Supreme Court of Wisconsin reversed, concluding that a conviction for bail jumping did not constitute punishment for the underlying act. Instead, it constituted punishment for the crime of violating a court order. While Jacobus did not raise a double-jeopardy claim, the court looked to the double-jeopardy context as analogous. In doing so, the court adopted the court of appeals' conclusion in *Nelson* that bail jumping and its underlying offenses constituted "distinct and separate offenses." *Id.* at 905.

The court also looked to legislative intent. It turned to § 946.49 to ascertain "the purpose of the bail jumping statute, to determine whether public drunkenness is the gravamen of the offenses with which Jacobus was charged." *Id.* In other words, did the legislature intend that § 946.49 punish a bail jumper for his *underlying offense or conduct*?

First, the court underscored that bail jumping and any underlying offense were distinct criminal charges. Second,

the court concluded that when an individual is charged with bail jumping, "the focus of the prosecution is on the fact that the individual has violated a condition of his or her bond. The focus is not on the underlying act." *Id.* at 905. Therefore, the court concluded, "[t]he State is not prosecuting the individual for public drunkenness or the consumption of alcohol." Accordingly, it held that Jacobus could be prosecuted for bail jumping when the underlying conduct was violation of a no-alcohol condition.

*D. Boyd's Double-Jeopardy Claim*

That brings us at last to Boyd's claim. Boyd argues that his state court convictions and punishment on the bail-jumping and substantive charges are "contrary to, or involv[ing] an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). First, Boyd argues that the Supreme Court of Wisconsin in *Jacobus* reached a conclusion opposite to that reached by the Supreme Court on a question of law. He contends that Supreme Court precedent compels the conclusion that, under an application of the *Blockburger* test, his bail-jumping and substantive charges were the "same offenses."

The problem with Boyd's argument is that it runs headlong into *Dixon*. First, we underscore that the federal law at issue must be *clearly established*. The "lesser-included-offense" analysis in *Dixon* included five separate opinions, all reaching different conclusions as to how *Blockburger* should apply. Assuming, as the district court did, that *Dixon* (a subsequent-prosecution case) applies equally in the multiple-punishment context, we don't see any federal law as being clearly established from that five-way divide.

Seven of the *Dixon* justices applied a lesser-included-offense analysis to the double-jeopardy issue. Of those, only four came to the conclusion that *any* of the subsequent prosecutions failed the *Blockburger* test. And of those four, the justices split in half as to *which* subsequent prosecutions were barred.

The court in *Jacobus* applied an analysis similar to Chief Justice Rehnquist's in *Dixon*, in which he concluded that none of the subsequent prosecutions were barred. We note that two other justices joined the Chief in that approach. Moreover, this approach garnered more votes than any of the other approaches laid out in the heavily fractured *Dixon* opinion. We can hardly conclude that the Supreme Court of Wisconsin erred in adopting that analysis—let alone that it contravened clearly established federal law.

In a footnote in his reply brief, Boyd himself concedes that *Dixon* does not create any clearly established federal law on this issue.[6] He argues instead that the law he relies upon is established not by *Dixon* but by other Supreme Court jurisprudence*.* His formulation of the clearly established federal law is "that it violates double jeopardy to punish an individual twice for the same offense without the legislature's express approval."

---

[6] The district court certainly understood Boyd to be arguing that *Dixon* established the relevant federal law. The district court concluded that "to the extent that Boyd's habeas petition is predicated on the claim that *Dixon* compels that his double jeopardy rights were violated … his petition will be denied."

Boyd may be correct in his general statement of the law. But that statement alone does not answer the critical question—*what constitutes the same offense* for the purposes of the Double Jeopardy Clause? The lesser-included-offense issue was the critical question in Boyd's case—it was outcome-determinative, and it is the very issue he appeals here. *Dixon* provides the Supreme Court's last word on it, so Boyd cannot avoid it. In fact, while attempting to distance himself from *Dixon*, Boyd simultaneously asks us to adopt the "incorporation" approach laid out in Justice Scalia's *Dixon* concurrence. Boyd's own request demonstrates that his path to proving a double-jeopardy violation must pass through *Dixon*.

Furthermore, even if Boyd were able to show that the *Jacobus* court erred in concluding that the two statutes passed the *Blockburger* test, his claim would still fail. As we noted above, there is a second step to the double-jeopardy analysis. "[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Hunter*, 459 U.S. at 368. In such cases, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing *greater punishment than the legislature intended.*" *Id.* at 366 (emphasis added).

The Supreme Court of Wisconsin concluded in *Jacobus* that the legislature intended that the bail jumping statute punish separate conduct (the act of violating a court order) from any underlying offense. Boyd has provided no reason why that conclusion does not apply to the statutes at issue in

his case. And we have no reason to otherwise disturb the court's conclusion.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Boyd's petition for a writ of habeas corpus.