STATE of Wisconsin EX REL. Alexander L. JACOBUS, Petitioner-Appellant,

v.

STATE of Wisconsin, Respondent-Respondent-Petitioner.

Supreme Court

*No. 94–2995. Submitted on briefs December 5, 1996.—Decided February 28, 1997.*

(Also reported in 559 N.W.2d 900.)

42

For the respondent-respondent-petitioner there were briefs by *William C. Wolford*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the petitioner-appellant there were briefs by *Alexander L. Jacobus*.

Amicus curiae was filed by *John Allan Pray, Debra Kvalheim* and *Legal Assistance Program, University of Wisconsin Law School*, in support of Alexander L. Jacobus.

¶ 1. N. PATRICK CROOKS, J. The State of Wisconsin (State) seeks review of a published decision of the court of appeals,[1] which reversed and remanded a judgment of conviction of the Circuit Court for Monroe County, Michael J. McAlpine, Judge. The court of appeals held that Wis. Stat. § 51.45(1) (1991–92)[2]

---

[1] *State ex rel. Jacobus v. State*, 198 Wis. 2d 783, 544 N.W.2d 234 (Ct. App. 1995).

[2] Section 51.45(1) provides: "It is the policy of this state that alcoholics and intoxicated persons may not be subjected to criminal prosecution because of their consumption of alcohol beverages but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society."

All further references are to the 1991–92 Statutes unless otherwise indicated.

prohibits the State from criminally prosecuting an individual under Wis. Stat. § 946.49[3] for bail jumping due to consumption of alcohol in violation of a condition of a bond. We conclude that § 51.45(1) does not prohibit the criminal prosecution of an individual for bail jumping under these circumstances, and therefore we reverse the decision of the court of appeals.

## I.

¶ 2. The pertinent facts are not in dispute. Over a three month period in 1992, the State charged Alexander L. Jacobus (Jacobus) with one count of disorderly conduct, two counts of operating a motor vehicle while intoxicated (OMVWI), and five counts of misdemeanor bail jumping. Three of these five counts of bail jumping were based upon Jacobus' consumption of alcohol in violation of a condition of his release bond.[4] Pursuant to a plea agreement with the State, Jacobus entered

---

[3] Section 946.49 provides:

(1) Whoever, having been released from custody under ch. 969, intentionally fails to comply with the terms of his or her bond is:

(a) If the offense with which the person is charged is a misdemeanor, guilty of a Class A misdemeanor.
(b) If the offense with which the person is charged is a felony, guilty of a Class D felony.

(2) A witness for whom bail has been required under s. 969.01(3) is guilty of a Class E felony for failure to appear as provided.

[4] The cases corresponding to these counts are: 92CM256 (three counts of misdemeanor bail jumping based upon consumption of alcohol); 92CM127 and 92CM140 (two additional counts of bail jumping) 92CT95 and 92CT148 (OMVWI); and 92CM99 (disorderly conduct).

*Alford* pleas[5] to three counts of bail jumping, only one of which was based solely upon his consumption of alcohol. Jacobus also entered *Alford* pleas to the count of disorderly conduct and two counts of OMVWI. The State dismissed the remaining two counts of bail jumping as part of this negotiated plea.

¶ 3. On August 18, 1992, the circuit court entered judgments of conviction for the three counts of bail jumping, one count of disorderly conduct, and two counts of OMVWI. The circuit court placed Jacobus on three years of probation, and ordered him to a ninety day alcohol commitment. The circuit court also imposed and stayed multiple jail sentences, on the condition that Jacobus successfully complete his probation.

¶ 4. On October 3, 1994, pursuant to a request from the Department of Corrections, the Monroe County Police took Jacobus into custody on a probation hold, based on several reported violations of his probation. Subsequently, the Department of Corrections served Jacobus with a formal notice of revocation. After Jacobus waived his right to a hearing, the Department of Corrections revoked his probation, and his stayed jail sentences went into effect.

¶ 5. On October 7, 1994, while in the Monroe County jail, Jacobus filed a petition for a writ of habeas corpus in the circuit court. Jacobus then filed a motion on October 11, 1994, in which he contended that he should be released from incarceration because Wis.

---

[5] *See North Carolina v. Alford*, 400 U.S. 25 (1970). An *Alford* plea is a guilty or no contest plea in which the defendant either maintains his or her innocence or does not admit that he or she committed the crime. *State v. Smith*, 202 Wis. 2d 21, 23 n.1, 549 N.W.2d 232 (1996); *State v. Garcia*, 192 Wis. 2d 845, 956, 532 N.W.2d 111 (1995).

Stat. § 51.45(1) prohibited the State from criminally prosecuting him in 1992 for bail jumping based upon his consumption of alcohol in violation of a condition of his release bond. At a habeas corpus hearing on November 4, 1994, the circuit court determined that § 51.45(1) did not prohibit the State from criminally prosecuting Jacobus for bail jumping, and therefore denied Jacobus' petition.

¶ 6. The court of appeals reversed, because it concluded that Wis. Stat. § 51.45(1) clearly prohibited the State from criminally prosecuting Jacobus for bail jumping based upon his consumption of alcohol in violation of a condition of his release bond.[6] *Jacobus*, 198 Wis. 2d at 789. The court of appeals further determined that although the State may prohibit alcohol consumption as a condition of bail, parole, or probation, the only available penalty is revocation of the applicable status. *Id.* at 790.[7]

## II.

¶ 7. The right to petition for a writ of habeas corpus is guaranteed by the Wisconsin and United

---

[6] The court of appeals initially concluded that Jacobus had not waived his right to contest his incarceration by entering the *Alford* pleas. The parties have not raised the waiver issue on review before this court; therefore, we do not consider it.

[7] Jacobus has proceeded *pro se* throughout the habeas corpus proceedings. However, this court invited the Legal Assistance to Institutionalized Persons Project (LAIP) of the University of Wisconsin Law School to file a nonparty brief under Wis. Stat. § 809.19(7) in support of Jacobus. LAIP accepted this invitation. We have carefully considered all arguments made by LAIP, as well as the parties, in their respective briefs. The court did not hear oral arguments in this case.

States Constitutions.[8] *State ex rel. Dowe v. Circuit Court for Waukesha County*, 184 Wis. 2d 724, 728, 516 N.W.2d 714 (1994). "Habeas corpus is confined to situations in which there is a pressing need for relief or where the process or judgment upon which a prisoner is held is void." *Id.* at 728–29; *accord J.V. v. Barron*, 112 Wis. 2d 256, 261, 332 N.W.2d 796 (1983). Therefore, a court will not grant a writ of habeas corpus when other adequate remedies at law exist. *Dowe*, 184 Wis. 2d at 728–29.

¶ 8. In the present case, Jacobus essentially is contending that the circuit court lacked subject matter jurisdiction to convict him of bail jumping in 1992, because Wis. Stat. § 51.45(1) prohibits the State from criminally prosecuting an individual for bail jumping due to consumption of alcohol in violation of a condition of a bond. Therefore, if Jacobus' interpretation of § 51.45(1) is correct, he is entitled to habeas corpus relief.

¶ 9. Accordingly, this case requires us to interpret Wis. Stat. § 51.45(1). Statutory interpretation presents a question of law which this court reviews *de novo*, without deference to the decisions of the lower courts. *E.g., State v. Petty*, 201 Wis. 2d 337, 354–55, 548 N.W.2d 817 (1996); *State v. Williams*, 198 Wis. 2d 516, 525, 544 N.W.2d 406 (1996). The goal of statutory

---

[8] Specifically, article I, section 8(4) of the Wisconsin Constitution provides: "The privilege of the writ of habeas corpus shall not be suspended unless, in cases of rebellion or invasion, the public safety requires it." Similarly, article I, section 9 of the United States Constitution states in pertinent part: "The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it."

interpretation is to ascertain and give effect to the legislature's intent. *E.g., State v. Sostre*, 198 Wis. 2d 409, 414, 542 N.W.2d 774 (1996); *Williams*, 198 Wis. at 527. To accomplish this goal, a court first resorts to the plain language of a statute. *E.g., Sostre*, 198 Wis. at 414; *State v. Speer*, 176 Wis. 2d 1101, 1121, 501 N.W.2d 429 (1993). If the intent of the legislature is clear from a statute's language, a court must give effect to this intent and look no further. *E.g., Williams*, 198 Wis. 2d at 525; *Speer*, 176 Wis. 2d at 1121.

¶ 10. However, if a statute is ambiguous,[9] a court must examine the scope, history, context, subject matter, and object of the statute in order to determine the legislature's intent. *E.g., Williams*, 198 Wis. 2d at 525; *Speer*, 176 Wis. 2d at 1121. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in more than one way. *E.g., Williams*, 198 Wis. 2d at 526; *Speer*, 176 Wis. 2d at 1121. In addition, "[t]he interaction of two statutes can create an ambiguity, as can the interaction of words in the statute." *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 201, 496 N.W.2d 57 (1993); *accord State ex rel. Newspapers, Inc. v. Showers*, 135 Wis. 2d 77, 87, 398 N.W.2d 154 (1987); *State v. Kenyon*, 85 Wis. 2d 36, 49, 270 N.W.2d 160 (1978).

¶ 11. We therefore must initially determine whether the legislature's intent is clear from the plain language of Wis. Stat. § 51.45(1). Section 51.45(1) provides: "It is the policy of this state that alcoholics and intoxicated persons may not be subjected to criminal prosecution because of their consumption of alcohol

---

[9] Both LAIP and the State argue that the statute is ambiguous.

beverages but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society." It is arguable that this language, on its face, prohibits the State from criminally prosecuting an individual for bail jumping due to consumption of alcohol in violation of a condition of a bond. However, § 51.45(17)(a) provides: "Nothing in this section affects any law, ordinance or rule the violation of which is punishable by fine, forfeiture or imprisonment." It is arguable that the plain language of this section allows for the prosecution of bail jumping due to the consumption of alcohol in violation of a condition of a bond, since this offense is punishable by fine or imprisonment under Wis. Stat. § 946.49. Accordingly, reasonably well-informed persons could interpret § 51.45(1), as it relates to § 946.49, differently due to the interaction of § 51.45(1) with § 51.45(17)(a). Since an ambiguity exists, we must consider the scope, history, context, and object of these statutes to ascertain the legislature's intent.

¶ 12. Wis. Stat. § 51.45 was created by Chapter 198, Laws of 1973 (Ch. 198). Ch. 198 originated as 1973 Assembly Bill 589. According to an analysis of 1973 Assembly Bill 589 by the Legislative Reference Bureau (LRB):[10]

> This bill adapts the Uniform Alcoholism and Intoxication Treatment Act to Wisconsin law. Administered by the department of health and

---

[10] This court has indicated that analysis by the LRB is significant in determining legislative intent. *Stockbridge School Dist. v. Department of Pub. Instruction Sch. Dist. Boundary Appeal Bd.*, 202 Wis. 2d 214, 225, 550 N.W.2d 96 (1996); *City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 184, 532 N.W.2d 690 (1995).

social services, **the proposal changes the present policy of making public drunkenness a criminal offense** and attempts to coordinate a comprehensive treatment program. (Emphasis added.)

. . . .

**The bill does not affect present laws against drunken driving and other offenses committed under the influence of alcohol.** (Emphasis added.)

This analysis indicates that the legislature intended to establish treatment programs for alcoholics and intoxicated persons rather than to allow prosecution of them for public drunkenness.[11] However, it also indicates that the legislature did not intend to change any additional criminal statutes other than those making public drunkenness a criminal offense.

¶ 13. The Uniform Alcoholism and Intoxication Treatment Act (Uniform Act) provides additional insight into the legislature's intent, since Wis. Stat. § 51.45 was substantially based on this act. *See* LRB analysis to 1973 Assembly Bill 589. In fact, § 51.45(1) was taken directly from § 1 of the Uniform Act. The comment to § 1 of the Uniform Act states:

**This section is intended to preclude the handling of drunkenness under any wide variety of petty criminal offense statutes,** such as loitering, vagrancy, disturbing the peace, and so forth. As the Crime Commissions pointed out, drunkenness by itself does not constitute disorderly conduct.

---

[11] This conclusion is also supported by a fiscal note found in the drafting file of 1979 Assembly Bill 589, which states: "This bill eliminates the criminal statutes relating to public drunkenness and substitutes treatment programs."

The normal manifestations of intoxication—staggering, lying down, sleeping on a park bench, lying unconscious in the gutter, begging, singing, etc.—will therefore be handled under the civil provisions of this Act and not under the criminal law.

*Uniform Act*, § 1, comment (citing *District of Columbia v. Greenwell*, 96 Daily Wash. L. Rptr. 2133 (D.C. Ct. Gen. Sess. December 31, 1968)) (emphasis added). In addition, the Uniform Act indicates that states adopting similar acts are "expected to repeal all the relevant portions of their criminal statutes under which drunkenness is the gravamen of the offense. . . ." *Uniform Act*, § 19, comment.[12] In Wisconsin, the legislature repealed Wis. Stat. § 947.03 (1971–72), which made public drunkenness a crime,[13] and Wis. Stat. § 974.04(1)(a) (1971–72), which made it a crime to enter a common carrier while intoxicated for purposes other than transportation within a single urban area.[14] The legislature did not repeal any other relevant criminal statutes. Accordingly, the comment to § 1 of the Uniform Act, and the legislature's repeal of §§ 947.03 and 947.04(1)(a), further indicate that the legislature intended to prohibit the prosecution of alcoholics and intoxicated persons only for public drunkenness under petty criminal offense statutes.[15] We therefore must

---

[12] This comment is especially persuasive here because Wis. Stat. § 51.45(17)(a) (initially numbered § 51.45(18)(a) in 1979 Assembly Bill 589) was nearly identical to § 19(c) of the Uniform act in the original bill.

[13] *See* § 32 of Ch. 198; Wis. Stat. § 947.03 (1971–72).

[14] *See* § 33 of Ch. 198; Wis. Stat. § 947.04(1)(a) (1971–72).

[15] However, note that the bail jumping statute did not specifically list alcohol consumption as a possible condition of a bond. *See* Wis. Stat. § 946.49 (1971–72). Therefore, the fact that

consider the purpose of the bail jumping statute, to determine whether public drunkenness is the gravamen of the offenses with which Jacobus was charged.

¶ 14. "The plain purpose of a bail jumping law is to deter those who have been released pending disposition of criminal charges from violating the conditions of their bond." *State v. Nelson*, 146 Wis. 2d 442, 451, 432 N.W.2d 115 (Ct. App.), *review denied*, 147 Wis. 2d 890, 436 N.W.2d 30 (1988). As further explained by the *Nelson* court:

> Bail jumping—violation of the conditions of a bond—is a 'violation of the law, a public wrong which is punishable by fine or imprisonment or both.' Because the offense 'diminishes the power of a court to control those properly within its jurisdiction and afflicts the court with detrimental effects,' it is itself made a crime.

*Id.* (citations omitted).[16] Therefore, bail jumping laws are intended not only to deter bail jumping, but also to enhance the effective administration of justice in the courts. *Id.* Specifically, courts impose bond conditions with the intent to protect members of the community from serious bodily harm, prevent intimidation of witnesses, assure a defendant's future appearance in court, and prevent a defendant from violating the law.

the legislature did not repeal § 946.49 does not conclusively indicate that the legislature intended this statute to remain in force.

[16] The court similarly indicated that bail jumping has been characterized as an affront to the power and dignity of the court, and therefore is considered a serious offense. *State v. Nelson*, 146 Wis. 2d 442, 451, 432 N.W.2d 115 (Ct. App.), *review denied*, 147 Wis. 2d 890, 436 N.W.2d 30 (1988).

*See* Wis. Const. art. I., § 8, cl. 2; Wis. Stats. §§ 969.01(1), 969.02(3)(d) & (4), 969.03(1)(e) & (2); *see also State v. Braun*, 152 Wis. 2d 500, 511–12, 449 N.W.2d 851 (Ct. App. 1989); *State v. Dennis*, 138 Wis. 2d 99, 103, 405 N.W.2d 711 (Ct. App.), *review denied*, 139 Wis. 2d 860, 415 N.W.2d 162 (1987). Prohibiting a defendant from consuming alcohol as a condition of his or her release bond certainly is in accord with these purposes.

¶ 15. We also consider it significant that the court of appeals has determined that bail jumping constitutes a separate offense for purposes of the Double Jeopardy Clause. Specifically, in *Nelson*, the defendant contended he could not be convicted of bail jumping and sexual assault, because the bail jumping charge was based entirely on the sexual assault; therefore, conviction of both offenses would constitute "multiple punishment" in violation of double jeopardy. *Id.* at 446. The court of appeals rejected this argument, because it determined that bail jumping and the conduct underlying a bail jumping charge are "distinct and separate offenses." *Id.* at 449; *see also State v. Harris*, 190 Wis. 2d 718, 724, 528 N.W.2d 7 (Ct. App. 1994), *review denied*, 531 N.W.2d 328 (1995) (bail jumping and underlying offense are separate offenses for purposes of double jeopardy).

¶ 16. Where the State prosecutes an individual under Wis. Stat. § 946.49 for bail jumping, the focus of the prosecution is on the fact that the individual has violated a condition of his or her bond. The focus is not on the underlying act. This is illustrated by the fact that in order to convict an individual under § 946.49, the State need only prove: (1) the individual has been

released from custody on bail; and (2) the individual has intentionally failed to comply with the terms of his or her bond. *Nelson*, 146 Wis. 2d at 449.

¶ 17. Applying this rationale to the present case, when the State prosecutes an individual for bail jumping due to consumption of alcohol in violation of a condition of a bond, the State is prosecuting the individual for failing to comply with the bond condition. The State is not prosecuting the individual for public drunkenness or the consumption of alcohol. Accordingly, public drunkenness is not the gravamen of the offense. *See Uniform Act*, § 19, comment. Since the State is not subjecting the individual to criminal prosecution for his or her consumption of alcohol, Wis. Stat. § 51.45(1) does not prohibit such prosecution.

¶ 18. In conclusion, we hold that Wis. Stat. § 51.45(1) does not prohibit the State from criminally prosecuting an individual under Wis. Stat. § 946.49 for bail jumping due to consumption of alcohol in violation of a condition of a bond. Moreover, the legislative history of §§ 51.45(1) and (17)(a) supports our holding, since it indicates that the legislature intended to prohibit only the prosecution of individuals for public drunkenness, not for other offenses.

*By the Court.*—The decision of the court of appeals is reversed.