STATE of Wisconsin, Plaintiff-Respondent,††

v.

John L. GRIFFIN, Defendant-Appellant.†

Court of Appeals

No. 97–0914–CR. Submitted on briefs January 22,
1998.—Decided May 7, 1998.

(Also reported in 584 N.W.2d 127.)

††Petition to cross review denied.
†Petition to review denied.

374

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Deininger, J.

DYKMAN, P.J. John Griffin appeals from a judgment convicting him of possession of marijuana, possession of cocaine, and bail jumping. He also

appeals from an order denying his motion for postconviction relief. He argues that the evidence was insufficient to prove beyond a reasonable doubt that he committed any of the three offenses. We conclude that no reasonable jury could have found Griffin guilty of possession of cocaine. Accordingly, we reverse the conviction on the cocaine possession charge. We also conclude that the evidence was sufficient to establish that Griffin was guilty of marijuana possession and bail jumping. Accordingly, we affirm the marijuana possession and bail jumping convictions.

Griffin raises several other arguments. He argues that: (1) the evidence obtained as a result of his arrest should have been suppressed because his arrest was not supported by probable cause; (2) the trial court erroneously exercised its discretion when it did not sever the bail jumping charges from the possession charges; (3) he was deprived of his right to a fair trial and his right to effective assistance of counsel when the trial court gave insufficient and prejudicial jury instructions; (4) the trial court erroneously exercised its discretion in admitting evidence that was irrelevant and unduly prejudicial; and (5) a new trial should be ordered in the interests of justice. We reject each of these arguments. Accordingly, we affirm in part, reverse in part, and remand for the trial court to vacate the cocaine possession conviction.

## BACKGROUND

Griffin was charged with possession of marijuana, possession of cocaine, and five separate counts of bail

jumping.[1] The possession offenses were alleged to have occurred in Rock County on or shortly before April 9, 1996. Four of the bail jumping counts alleged that Griffin did not remain inside his residence between 9:00 p.m. and 6:00 a.m. as required by his bail bonds for four other charges. The other bail jumping count alleged that Griffin failed to comply with the terms of a bail bond when he committed a crime.

Prior to trial, Griffin moved the court to sever the bail jumping counts from the drug possession counts. The trial court denied the motion. On the date of trial, Griffin renewed his severance motion, but this time he requested only that the court sever the bail jumping charges alleging that he did not remain inside his residence between 9:00 p.m. and 6:00 a.m. The trial court again denied the motion.

At trial, Officer Orville Kreitzmann of the State Line Area Narcotics Team (SLANT) testified that on April 9, 1996, at approximately 1:00 p.m., several SLANT officers executed a search warrant for controlled substances at an upstairs, two-bedroom apartment located at 1864 1/2 Park Avenue in Beloit. About a half-hour earlier, Kreitzmann had observed John Griffin leave the apartment. Upon entering the apartment, Kreitzmann encountered Cynthia Davis, who lived at the apartment. Two other adults were also in the apartment.

During the search, officers found three "blunts" hidden in the kitchen. Kreitzmann described a "blunt" as a hollowed-out cigar used to smoke or conceal controlled substances. Chemical testing of the blunts revealed that they contained THC, the biologically

---

[1] Griffin was originally charged with two counts of possession of marijuana, but the State only included one count in its amended information.

active substance in marijuana. Officer Kreitzmann testified that the odor of marijuana was prevalent throughout the apartment.

Officers also found a piece of coat hanger about five inches long in the hallway of the apartment. Kreitzmann testified that drug users commonly place cotton balls or some type of cloth on the end of a section of coat hanger, dip the cloth in flammable liquid, and ignite the liquid. The "torch" is then used to smoke a controlled substance such as crack cocaine or marijuana or to cook cocaine, transforming powdered cocaine into crack cocaine. Kreitzmann considered the piece of hanger to be drug paraphernalia.

In addition, officers found a number of sandwich baggies in the garbage with the corners removed. Kreitzmann testified that controlled substances are most commonly packed in plastic sandwich bags. In his opinion, the corners of the baggies found in the garbage were probably used to package a controlled substance, most likely crack cocaine. No cocaine was found in the apartment, however.

During the search, officers found two photographs taken of Griffin while he was inside the residence. They also found several items of men's clothing, including a pair of blue jeans in which they found $3500 in money orders payable to Griffin. To Kreitzmann's knowledge, Griffin had never held a job.

While the search was in progress, outside surveillance observed Griffin approaching the residence. Kreitzmann went outside to meet him. When Griffin was fifteen to twenty feet from Kreitzmann, he turned away and placed his hands behind his back "in the classic handcuff position." Kreitzmann immediately went to Griffin and placed handcuffs on him, advising him that he was under arrest. When Kreitzmann was

in close proximity to Griffin, he could smell marijuana on his clothing and on his breath.

Kreitzmann seized $764.90 from Griffin. A drug-detecting dog twice located a hidden envelope containing the currency seized from Griffin. The dog is unable to distinguish between marijuana, cocaine and heroin, however.

Police obtained a search warrant to obtain blood and urine samples from Griffin. A state crime lab analyst testified that the urine sample tested positive for cocaine, cocaine metabolite and THC metabolite, while the blood sample tested positive for THC metabolite.

Griffin's sister, Kathryn, testified that Griffin lived with her at 1913 Church Street and that he was always home at night. She testified that on several occasions, Cynthia Davis took articles of Griffin's clothing from 1913 Church Street to take home with her to wash.

The jury found Griffin guilty of possession of cocaine, possession of marijuana, and bail jumping for committing a crime in violation of his bail bond. The jury found Griffin not guilty on three of the bail jumping counts alleging that he failed to remain inside his residence between 9:00 p.m. and 6:00 a.m. The trial court dismissed the other bail jumping count as multiplicitous.

Griffin filed a motion for postconviction relief, which the trial court denied. Griffin appeals.

## SUFFICIENCY OF THE EVIDENCE

Griffin argues that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of possession of cocaine, possession of marijuana, or bail

jumping. In *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–758 (1990), the court set forth the test for reviewing the sufficiency of the evidence:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

(Citations omitted.)

The first issue we confront is whether the presence of cocaine, cocaine metabolite and THC metabolite in Griffin's urine and the presence of THC metabolite in Griffin's blood is sufficient, in and of itself, to uphold the marijuana and cocaine possession convictions. No Wisconsin court has addressed the issue of whether the presence of drugs in one's urine or blood stream is sufficient to support a possession conviction. However, the great majority of courts in other jurisdictions considering the question have held that the presence of a controlled substance in one's urine or blood, without more, is insufficient evidence on which to base a conviction for possession.[2]

---

[2] *See, e.g., Alaska v. Thronsen*, 809 P.2d 941, 943 (Alaska Ct. App. 1991); *Indiana v. Vorm*, 570 N.E.2d 109, 111 (Ind. Ct. App. 1991); *Kansas v. Flinchpaugh*, 659 P.2d 208, 212 (Kan. 1983); *Franklin v. Maryland*, 258 A.2d 767, 769 (Md. Ct. Spec. App. 1969); *Minnesota v. Lewis*, 394 N.W.2d 212, 217 (Minn. Ct.

Like other jurisdictions, to be found guilty of possession of a controlled substance in Wisconsin, the defendant must have had the substance under his or her control and must have knowingly possessed the substance. *See* WIS J I—CRIMINAL 920; *Poellinger*, 153 Wis. 2d at 508, 451 N.W.2d at 758. Because our law of possession is similar to other jurisdictions, we follow those jurisdictions which have held that the mere presence of drugs in a person's system is insufficient to prove that the drugs are knowingly possessed by the person or that the drugs are within the person's control. Accordingly, we conclude that the presence of drugs in Griffin's urine and blood stream, without more, is insufficient evidence on which to base a possession conviction.

Although the presence of drugs in someone's system, standing alone, is insufficient to support a conviction for possession, the presence of drugs is circumstantial evidence of prior possession. *See Kansas v. Flinchpaugh*, 659 P.2d 208, 212 (Kan. 1983). "Although insufficient by itself to support a conviction, when combined with other corroborating evidence of sufficient probative value, evidence of assimilation can be sufficient to prove possession beyond a reasonable doubt." *Washington v. Dalton*, 865 P.2d 575, 576 (Wash. Ct. App. 1994). Therefore, the question we face is whether, along with the blood and urine tests, there is sufficient corroborating evidence on which a jury could find Grif-

App. 1986); *City of Logan v. Cox*, 624 N.E.2d 751, 754 (Ohio Ct. App. 1993); *Oregon v. Downes*, 572 P.2d 1328, 1330 (Or. Ct. App. 1977); *Washington v. Dalton*, 865 P.2d 575, 576 (Wash. Ct. App. 1994).

fin guilty of possession of marijuana and possession of cocaine beyond a reasonable doubt.

■

With regard to the marijuana possession conviction, we believe that the presence of drugs in Griffin's system, when combined with other corroborating evidence of Griffin's possession, was sufficient to support the jury's verdict. Griffin was seen leaving 1864 1/2 Park Avenue a half hour before officers executed a search warrant at that address, and several articles of his clothing were found at that address. When searching the apartment, Officer Kreitzmann smelled the odor of marijuana, and officers found three blunts containing THC in the apartment's kitchen. And when Kreitzmann encountered Griffin on the street outside the apartment, he could smell marijuana on Griffin's clothing and on his breath. Based on the presence of TH C in Griffin's system and other corroborating evidence, a reasonable jury could find beyond a reasonable doubt that Griffin knowingly possessed and ingested marijuana in Rock County on or shortly before April 9, 1996, most likely in the apartment on Park Avenue.

We do not come to the same conclusion with regard to the cocaine possession conviction, as we do not believe that the corroborating evidence was sufficient to establish beyond a reasonable doubt that Griffin knowingly possessed cocaine in Rock County on or shortly before April 9, 1996. The only cocaine found was in Griffin's urine. The police officers did not find cocaine in the searched apartment or on Griffin's person.

Police did find a piece of coat hanger that they believed was used to either smoke a controlled substance or to cook cocaine. We find the probative value of this evidence lacking for two reasons. First, Officer

Kreitzmann testified that pieces of coat hanger such as the one found can be used to smoke controlled substances other than cocaine. There was no evidence that the piece of coat hanger found in the apartment was used to smoke crack cocaine, nor some other controlled substance.

Second, we find it important that the jury found Griffin not guilty of bail jumping for failing to remain in his residence between 9:00 p.m. and 6:00 a.m. The clear implication of these not guilty verdicts is that the jury believed Griffin resided at 1913 Church Street, not at 1864 1/2 Park Avenue. Because the jury did not believe that Griffin lived at the Park Avenue apartment, we do not believe that it is reasonable to infer that Griffin, not somebody else, used the piece of hanger to smoke a controlled substance.

Police also found a number of sandwich baggies in the garbage at the apartment that they believed were probably used to package crack cocaine. Again, because the jury did not believe that Griffin lived at the Park Avenue apartment, we do not believe that the existence of sandwich baggies at that address was sufficient to prove beyond a reasonable doubt that Griffin, not somebody else, packaged crack cocaine at that address. In addition, this evidence is probative of whether somebody possessed and *packaged* cocaine at the apartment; it would not corroborate the evidence from Griffin's urine tests that he possessed and *used* cocaine in Rock County on or shortly before April 9, 1996.

Officers also found $3500 in money orders payable to Griffin in the apartment and $764.90 on Griffin's person, and Officer Kreitzmann testified that Griffin never held a job to his knowledge. The State argues that this is evidence that Griffin was dealing drugs. We

agree that the unexplained large quantity of cash and money orders found on Griffin's person and in his clothing is probative of whether he was a drug dealer. *See State v. Pozo*, 198 Wis. 2d 705, 714, 544 N.W.2d 228, 232 (Ct. App. 1995). However, in *Pozo*, we stated that when a defendant is charged with simple drug possession, it does not matter "whether there was evidence suggesting that [the defendant] was selling drugs." *Id.* For a possession conviction, the State must prove that the defendant knowingly possessed a controlled substance. *See id.*; *Poellinger*, 153 Wis. 2d at 508, 451 N.W.2d at 758. "Evidence that [the defendant] had money but no job would have no tendency to establish those facts." *Pozo*, 198 Wis. 2d at 714, 544 N.W.2d at 232. We are required to accept this proposition. The court of appeals does not have the power to overrule, modify or withdraw language from its published opinions. *Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246, 256 (1997).

The State also argues that the fact that a drug-detecting dog could find the money seized from Griffin is circumstantial evidence of Griffin's prior cocaine possession. However, because the dog is unable to differentiate between cocaine, marijuana and heroin, we do not believe that the existence of drug residue on the money is sufficient to prove beyond a reasonable doubt that Griffin possessed cocaine.

The presence of drug residue on the money also does not establish when and where Griffin may have possessed the drugs. In addition to proving the elements of the crime, the State has the burden to prove venue beyond a reasonable doubt. *See State v. Mattes*, 175 Wis. 2d 572, 576, 499 N.W.2d 711, 713 (Ct. App. 1993). The proper venue for a criminal trial is the county where the crime was committed. Section

971.19(1), STATS. The drug residue on the money does not establish that Griffin possessed cocaine in Rock County, which was the venue for Griffin's trial.

Finally, the State argues that the fact that Griffin placed his hands behind his back in the "classic hand-cuff position" when Kreitzmann approached him is circumstantial evidence that Griffin knowingly possessed drugs. Although we agree that this is indicative of Griffin's consciousness of guilt, it does not establish that Griffin believed he was guilty of possessing cocaine in Rock County on or shortly before April 9, 1996. Griffin could have placed his hands behind his back because he knew he was guilty of possessing marijuana; therefore, we do not believe that Griffin's actions are sufficiently probative of whether he knowingly possessed cocaine.

In summary, when viewing the evidence as a whole in a light most favorable to the verdict, we do not believe that the evidence the State presented in addition to the urine test results was of sufficient probative force to prove beyond a reasonable doubt that Griffin possessed cocaine on or shortly before April 9, 1996, in Rock County. Accordingly, we reverse Griffin's cocaine possession conviction.

■

Griffin also challenges the sufficiency of the evidence for the bail jumping conviction. To establish that Griffin was guilty of bail jumping, the State needed to prove that Griffin committed a new criminal offense while released on bond. We have already concluded that the evidence was sufficient to prove that Griffin was guilty of marijuana possession. Because the evidence was sufficient to prove that Griffin committed a new offense while released on bond, the evidence is also

385

sufficient to prove that Griffin was guilty of bail jumping. Accordingly, we affirm the bail jumping conviction.

## PROBABLE CAUSE TO ARREST

■ Griffin argues that the evidence obtained as a result of his arrest should have been suppressed because his arrest was not supported by probable cause. In reviewing a motion to suppress evidence, we will uphold the trial court's findings of fact unless they are clearly erroneous. *See State v. King*, 175 Wis. 2d 146, 150, 499 N.W.2d 190, 191 (Ct. App. 1993). "Whether a search or seizure passes constitutional muster, however, is a question of law subject to *de novo* review." *See id.*

In *State v. Mitchell*, 167 Wis. 2d 672, 681–82, 482 N.W.2d 364, 367–68 (1992), the court defined "probable cause":

> Probable cause is the *sine qua non* of a lawful arrest. Probable cause refers to the quantum of evidence which would lead a reasonable police officer to believe that defendant committed a crime. There must be more than a possibility or suspicion that defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not. The information which constitutes probable cause is measured by the facts of the particular case.

Probable cause is a common-sense determination. It is judged by the factual and practical considerations of everyday life on which reasonable people, not legal technicians, act. *See State v. Pozo*, 198 Wis. 2d 705, 711, 544 N.W.2d 228, 231 (Ct. App. 1995).

Officer Kreitzmann was the only witness to testify at the suppression hearing. Kreitzmann testified that he had been a police officer for sixteen-and-one-half years, with twelve years of narcotics enforcement. He testified that he was previously involved in one or two investigations concerning Griffin's possession of controlled substances. He knew that Griffin had been twice convicted of drug possession.

Kreitzmann testified about his involvement with the search of 1864 1/2 Park Place. He testified that they found baggies with the corners removed, blunts containing marijuana, several items of Griffin's clothing and money orders payable to Griffin in the apartment. The blunts were still moist, as if they had recently been in someone's mouth. He also testified that while officers were secreted inside the apartment, five people came to the residence to purchase drugs, one with a twenty-dollar bill in his hand, and another possessing a quantity of marijuana.

One of the persons inside the apartment told Kreitzmann that Griffin had stayed at the apartment the night before, and Kreitzmann saw Griffin leave just prior to the execution of the search warrant. When Kreitzmann encountered Griffin on the street, Griffin stopped, turned and placed his hands behind his back. Kreitzmann then arrested him for possession of the marijuana found inside the apartment.

Marijuana was found in the apartment at 1864 1/2 Park Avenue. Kreitzmann knew that Griffin had been previously convicted of drug possession. Kreitzmann also had evidence that Griffin was staying at the apartment, as he found Griffin's clothing in the apartment and was told that Griffin had stayed there the night before. Finally, Griffin placed his hands behind his

back upon meeting Kreitzmann, which is probative of Griffin's consciousness of guilt. We conclude that this evidence, viewed as a whole, would lead a reasonable police officer to believe that it was more than a possibility that Griffin possessed the marijuana found inside the apartment. Accordingly, we conclude that Officer Kreitzmann had probable cause to arrest Griffin.[3]

## SEVERANCE

■

Griffin argues that the trial court erroneously exercised its discretion when it did not sever the bail jumping charges from the possession charges. If it appears that the defendant is prejudiced by joinder of the offenses, the trial court may order separate trials of the offenses. Section 971.12(3), STATS. This decision is left to the trial court's discretion. *State v. Locke*, 177 Wis. 2d 590, 597, 502 N.W.2d 891, 894 (Ct. App. 1993). We will not conclude that the trial court erroneously exercised its discretion unless Griffin can show that

---

[3] We base our probable cause determination solely on the testimony presented at the probable cause hearing. The State also asks us to consider Officer Kreitzmann's affidavit used to obtain the search warrant for Griffin's blood and urine samples. In support of its argument that our review is not limited to facts presented at the suppression hearing, the State cites *State v. Truax*, 151 Wis. 2d 354, 360, 444 N.W.2d 432, 435 (Ct. App. 1989), and *State v. Mazur*, 90 Wis. 2d 293, 304, 280 N.W.2d 194, 199 (1979). Griffin argues that *Truax* and *Mazur* only allow us to consider other testimonial evidence, not *ex parte* affidavits. Because we have concluded that the suppression hearing testimony is sufficient to establish probable cause, we do not need to determine whether we could also consider the affidavit in our probable cause determination.

the failure to sever the counts caused him "substantial prejudice." *See id.*

The bail jumping charges were predicated on the fact that Griffin had been released on bond pending appeal following convictions in four prior cases. Griffin argues that the evidence that he had been charged and convicted in four other criminal cases was highly prejudicial to the jury's consideration of the drug possession charges.

We have already concluded that the evidence was insufficient to convict Griffin of cocaine possession, and therefore any potential effect that Griffin's four other criminal charges had on the jury's cocaine possession verdict is irrelevant. With regard to the marijuana possession conviction, we do not agree that the trial court's failure to sever the counts caused Griffin substantial prejudice. The evidence was sufficient to support the conviction, and therefore we do not believe that the jury's verdict was tainted by its knowledge of Griffin's prior convictions. In addition, the jury was not informed of the specific nature of the other convictions, and therefore the information was less prejudicial than if the jury were informed that Griffin had been convicted of similar offenses. Finally, Griffin's sister testified that Griffin "was going to his parole officer a lot," and therefore the jury would have known that Griffin had prior convictions without the presence of the bail jumping charges.

## RIGHT TO A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL

Griffin argues that he was deprived of his right to a fair trial and his right to effective assistance of counsel when the trial court, in instructing the jury on the elements of bail jumping, informed the jury not only that Griffin had been charged with four different criminal offenses, but also that he had been convicted of the offenses. Griffin's counsel did not object to the jury instruction, however, and counsel's failure to object to instructions at the instruction conference deprives us of the power to directly consider the issue. *See State v. Schumacher*, 144 Wis. 2d 388, 409, 424 N.W.2d 672, 680 (1988).[4] We may, however, review the alleged error in the jury instructions under a claim of ineffective assistance of counsel. *See id.* at 408–09 n.14, 424 N.W.2d at 680. We will do so.

To establish that he received ineffective assistance of counsel, Griffin must satisfy a two-part test. First, he must show that his counsel's performance was deficient. Second, he must prove that "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). If Griffin fails to meet either the deficient performance or prejudice component of the test, we need not address the other

---

[4] In *State v. Kuntz*, 160 Wis. 2d 722, 735, 467 N.W.2d 531, 535 (1991), the supreme court ruled that "circuit courts of this state must inform counsel of changes they make to jury instructions following the instructions conference." There is no evidence in this case, however, to indicate that the circuit court made changes to the jury instructions following the instruction conference. Therefore, we conclude that *Kuntz* does not apply.

component. *See State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69, 76 (1996).

We conclude that Griffin has not established ineffective assistance of counsel because he has not proven that he was prejudiced by the jury instruction. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

We are unconvinced that the trial proceeding would have been different had the jury been instructed that Griffin was only charged with four other crimes, not that he had been charged and convicted of the other offenses. Prior to receiving the instruction, the jury had already heard testimony that Griffin frequently visited his parole officer. The jury would have already known that Griffin had previous criminal convictions without the instruction. Because the jury already knew that Griffin had been previously convicted, it is not reasonably probable that Griffin would have been found not guilty of possession if the jury had not received the disputed instruction.

Griffin also argues that he was deprived of due process, his right to a fair trial and his right to effective assistance of counsel because the jury did not receive an instruction advising it to consider each count separately and to not let its verdict on one count affect the verdicts on other counts. Without deciding whether the failure to give this jury instruction was erroneous, we conclude that the absence of the instruction was harmless. *Cf. State v. Coleman*, 206 Wis. 2d 199, 215–16, 556

N.W.2d 701, 708 (1996) (applying harmless error rule to error in jury instructions).

An error is harmless if there is no reasonable possibility that the error contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). The court instructed the jury: "It is for you to determine which six forms of verdict submitted you will bring in as your verdicts. You may find the defendant guilty of all, some or none of the offenses charged." This sufficiently instructed the jury that all counts were to be considered separate from one another. The fact that the jury found Griffin not guilty on three of the bail jumping counts shows that it considered the counts separately, not in conjunction with one another. There is no reasonable probability that the absence of the requested instruction contributed to Griffin's convictions.

## ADMISSIBILITY OF EVIDENCE

Griffin contends that the trial court erred in admitting testimony that he was not employed as well as testimony that $764 in cash was found on his person and $3500 in money orders payable to him was found in his clothing. Griffin argues that this evidence was irrelevant and unfairly prejudicial.

To be admissible at trial, evidence must be relevant. Section 904.02, STATS. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Section 904.01, STATS. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of

unfair prejudice. Section 904.03, STATS. Whether to admit evidence is a matter within the trial court's discretion. *State v. Evans*, 187 Wis. 2d 66, 77, 522 N.W.2d 554, 557 (Ct. App. 1994).

■

Griffin was charged with drug possession. In *State v. Pozo*, 198 Wis. 2d 705, 714, 544 N.W.2d 228, 232 (Ct. App. 1995), we stated that although a large amount of cash on an unemployed defendant may be relevant to whether the defendant is selling drugs, the evidence "would have no tendency to establish" that the defendant was guilty of simple possession. Accordingly, under *Pozo*, which we must follow, the evidence that Griffin possessed $3500 in money orders and $764 in cash, yet was unemployed, was irrelevant to whether he was guilty of simple possession. We conclude that the trial court erroneously exercised its discretion in admitting the evidence.

Although the evidence was erroneously admitted, we conclude that the admission of the evidence was harmless. Again, an error is harmless if there is no reasonable possibility that the error contributed to the conviction. *Dyess*, 124 Wis. 2d at 543, 370 N.W.2d at 231–32. A "reasonable possibility" is one which is sufficient to undermine confidence in the outcome of the proceeding. *State v. Patricia A.M.*, 176 Wis. 2d 542, 556, 500 N.W.2d 289, 295 (1993). "Our task is to examine the erroneously admitted evidence and the remainder of the untainted evidence in context to determine whether the error was harmless." *State v. Harris*, 199 Wis. 2d 227, 256, 544 N.W.2d 545, 557 (1996).

Because we have already concluded that the evidence was insufficient to convict Griffin of cocaine possession, the potential effect of the drug dealing evi-

dence on the cocaine possession conviction is irrelevant. With regard to the marijuana possession conviction, we conclude that there is no reasonable possibility that the erroneously-admitted evidence contributed to the conviction. The evidence of Griffin's prior marijuana possession, although circumstantial, was substantial. Three blunts containing THC were found at the Park Avenue apartment, and an officer smelled the odor of marijuana in the apartment. Griffin was seen leaving the apartment a half hour before officers entered, and several items of his clothing were found there. When Griffin was arrested shortly thereafter on the street outside the apartment, an officer could smell marijuana on Griffin's clothing and on his breath. Finally, THC metabolite was found both in Griffin's blood and in his urine. The untainted evidence would lead the jury to only one reasonable conclusion: that Griffin knowingly possessed marijuana. Therefore, we do not believe that the erroneously-admitted evidence affected the jury's verdict.

## NEW TRIAL IN THE INTERESTS OF JUSTICE

Griffin argues that he is entitled to a new trial in the interests of justice because the real controversy has not been fully tried. *See* § 752.35, STATS.; *State v. Wyss*, 124 Wis. 2d 681, 735, 370 N.W.2d 745, 770–71 (1985). He contends that the jury's verdict was tainted by its knowledge of his four recent convictions.

We have already rejected Griffin's argument that the jury's knowledge of his other convictions tainted its verdict. Accordingly, we conclude that the real controversy has been fully tried, and we decline to exercise our power of discretionary reversal.

*By the Court.*—Judgment and order affirmed in part; reversed in part; and cause remanded with directions.