STATE of Wisconsin, Plaintiff-Respondent,

v.

Louis TAYLOR, Defendant-Appellant.†

Court of Appeals

*Nos. 98–0962–CR, 98–0963–CR. Submitted on briefs February 15, 1999.—Decided April 28, 1999.*

(Also reported in 595 N.W.2d 56.)

†Petition to review denied.

491

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J.   Louis Taylor appeals from convictions of possession of marijuana, carrying a concealed weapon and felony bail jumping, and from a trial court order denying his motion to suppress drug and weapon evidence. Taylor disputes whether the police had reasonable suspicion to stop and search him. He also contends that a positive urine test, while he was on bail, was insufficient to support the felony bail jumping conviction. We affirm the suppression order and the judgments of conviction.[1]

The undisputed facts concerning the stop and search of Taylor are established through the testimony of City of Racine Police Officer Donald Veselik. Veselik stated that on the evening of March 21, 1997, he and several other officers were seeking a female juvenile on a bench warrant at 266 Harrison Street in Racine.

---

[1] The convictions were appealed separately from circuit court case no. 97–CF–298 (possession of tetrahydrocannabinols (THC), with intent to deliver 500 grams or less within 1000 feet of a school while using a weapon, contrary to §§ 961.41(1m)(h)1, 961.14(4)(t), 961.50, 961.49(1), (2)(b) and 939.63(1)(a)3, STATS., and carrying a concealed weapon, contrary to §§ 941.23 and 939.51(3)(a), STATS.) and case no. 97–CF–520 (bail jumping, contrary to §§ 946.49(1)(b) and 939.50(3)(d), STATS.). We granted Taylor's motion for consolidation.

Veselik went to the rear of the residence to secure the back door while the other officers knocked at the front entrance. He described the Harrison Street neighborhood as "a high drug area with multiple gunshots throughout the nights, almost every night. There [are] multiple deaths there. It's a high gang area."

As the other officers knocked on the front door, Veselik saw a man, later identified as Taylor, exit a rear door of the residence while "stuffing a paper bag into his jacket pocket." Veselik testified that Taylor's use of the rear door was unusual because he could have used the front door, he continued to look to the front of the house as he used the rear porch stairs and he turned to enter the backyard which was enclosed by a six-foot cyclone fence. Taylor approached Veselik within four to five feet, and Veselik told him to stop and raise his hands. After Taylor complied, Veselik testified to the following events:

> I reached and felt the bag that he had tucked into his pocket, and I felt the grip of a handgun, revolver. . . . I told him to grip his hands tightly over his head, and I turned and directed him toward the porch post. At that time I removed the bag from his person and verified there was indeed a gun in there and what appeared to me to be a green leafy substance, marijuana. At that point I handcuffed him and radioed for more squads to transport.

> Based upon the above testimony, the trial court found:

> [F]irst of all, I think the officer had a duty to stop [Taylor], because [the officer] is there to secure the premises. When people are fleeing the scene, [the officer has] got the duty to stop individuals and see why they're fleeing the scene.

Secondly, when [the officer] stops [Taylor], [the officer] has a duty to himself and his family to pat him down to make sure [the officer is] not putting himself in a dangerous situation.

I find the stop was appropriate and the actions taken by the officer were appropriate.

We will uphold the trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence. Whether those facts satisfy the constitutional requirement of reasonableness is a question of law, and therefore we are not bound by the trial court's decision on that issue. *See State v. Guzy*, 139 Wis. 2d 663, 671, 407 N.W.2d 548, 552 (1987). We first address Taylor's contention that the investigative stop was not justified.

The Fourth Amendment of the United States Constitution protects "[t]he right of the people . . . against unreasonable searches and seizures." While an investigative stop is technically a "seizure" under the Fourth Amendment, a police officer may, under the appropriate circumstances, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause for arrest. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968). Wisconsin has adopted the *Terry* rule, *see State v. Chambers*, 55 Wis. 2d 289, 294, 198 N.W.2d 377, 379 (1972), and has codified it in § 968.24, STATS.[2] Taylor argues that a lawful temporary stop

---

[2] Section 968.24, STATS., states:

**Temporary questioning without arrest.** After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct. Such detention and temporary

under § 968.24 requires that "the officer reasonably suspects that such person is committing, is about to commit or has committed a crime" and claims that no such suspicion existed here.

We interpret the scope of the "statutory expression" of *Terry* in § 968.24, STATS., by applying *Terry* and the cases following it. *See State v. Jackson*, 147 Wis. 2d 824, 830–31, 434 N.W.2d 386, 389 (1989). The fundamental focus of the Fourth Amendment and § 968.24 is on reasonableness. *See State v. Anderson*, 155 Wis. 2d 77, 83, 454 N.W.2d 763, 766 (1990). The question of what constitutes reasonableness is a commonsense test which considers what a reasonable police officer would reasonably suspect in light of his or her training and experience. *See id.* at 83–84, 454 N.W.2d at 766. The "commonsense approach" strikes a balance between individual privacy and the societal interest in allowing the police a reasonable scope of action in discharging their responsibilities. *See State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681, 684 (1996). While an inchoate and unparticularized crime will not support an investigatory stop, an officer's suspicion based on specific, articulable facts and the reasonable inferences drawn from those facts will support a stop. *See id.* at 57, 556 N.W.2d at 685.

██

We agree with the trial court that the totality of the facts supports a reasonable basis for Veselik's suspicion that something unlawful was afoot with Taylor. Taylor was leaving a residence secured by police officers for a lawful purpose (serving a bench warrant) through an unusual route that took him into an enclosed backyard. He appeared to be concerned with

questioning shall be conducted in the vicinity where the person was stopped.

police officers who were knocking at the front door while he was leaving the house and attempting to place something in his jacket pocket. At the very least, Taylor was leaving the target residence and he may have had information concerning the subject of the warrant. The essence of good police work is to briefly stop an individual where the circumstances indicate that the status quo be temporarily maintained in order to obtain information. *See State v. Williamson*, 58 Wis. 2d 514, 518, 206 N.W.2d 613, 615 (1973). We conclude that Veselik was discharging a legitimate investigative function when he stopped Taylor and that the stop was warranted by the totality of the existing facts and circumstances known to Veselik.

We next address Taylor's challenge to the pat-down by Veselik that resulted in the discovery of a weapon and drug evidence. Because a pat-down is a search, it is governed by the same constitutional reasonableness requirement that attends an investigatory stop. *See State v. Morgan*, 197 Wis. 2d 200, 208–09, 539 N.W.2d 887, 891 (1995). A pat-down or frisk is justified during a lawful investigatory stop "where a police officer observes unusual conduct which leads [the officer] reasonably to conclude in light of his [or her] experience that . . . the persons with whom [the officer] is dealing may be armed and presently dangerous." *Terry*, 392 U.S. at 30. Like the investigative stop, Wisconsin has adopted the *Terry* position on pat-downs and has codified the rule in § 968.25, STATS.[3] As with

---

[3] Section 968.25, STATS., states in relevant part:

**Search during temporary questioning**. When a law enforcement officer has stopped a person for temporary questioning pursuant to s. 968.24 and reasonably suspects that he or she or another is in danger of physical injury, the law enforcement officer may search such person for weapons or any instrument or article or

§ 968.24, STATS., we interpret the statutory expression of § 968.25 by resorting to case law. *See Jackson*, 147 Wis. 2d at 830–31, 434 N.W.2d at 389.

The test for determining the reasonableness of a pat-down search is objective and has been set forth in *Morgan*, 197 Wis. 2d at 209, 539 N.W.2d at 891 (quoted sources omitted), as follows:

> [T]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger. . . . And in determining whether the officer acted reasonably in such circumstances, due weight must be given . . . to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of [the officer's] experience.

During a lawful investigatory stop, the officer "need not reasonably believe that an individual is armed; rather, the test is whether the officer 'has a reasonable suspicion that a suspect may be armed.' " *Id.* (quoted source omitted). Like an investigatory stop, the question of reasonableness for a pat-down search is determined by "the totality of the circumstances known to [the searching officer]." *Id.*

■

Taylor left the house while police officers were attempting to serve a bench warrant on a person they expected to be at the residence. He left through the back door, repeatedly looked in the direction of the officers who were knocking on the front door, and turned into a backyard enclosed by a six-foot-high fence. Veselik saw him put a paper bag in his jacket pocket. Veselik described the neighborhood as danger-

---

substance readily capable of causing physical injury and of a sort not ordinarily carried in public places by law abiding persons.

ous, as a "high gang area" and as a "high drug area with multiple gunshots throughout the nights." He added that "[t]here [are] multiple deaths there." Veselik testified that he "reached and felt the bag that [Taylor] had tucked into his pocket, *and [that he] felt the grip of a handgun, a revolver.*" (Emphasis added.) As with the investigative stop, we conclude that Veselik had a reasonable suspicion that he was in danger of physical injury during his encounter with Taylor and that the pat-down search of Taylor was warranted by the totality of the existing circumstances known to Veselik.

We now address Taylor's challenge to his conviction of felony bail jumping. The facts are undisputed. The drug and weapon charges were filed on March 24, 1997, and the trial court set cash bail of $1000 on the drug charge and required a $1000 signature bond cosigned by Taylor's aunt on the weapon charge. In addition, the trial court told Taylor:

> I am going to require you, Mr. Taylor, to register with Kaiser [Laboratory] if you are released and be available 24 hours a day, 7 days a week for testing for controlled substances. You are also not to have any weapons or drug paraphernalia.

The March 24, 1997 release order set, inter alia, nonmonetary conditions of release that Taylor "shall not have illegal drugs in possession or control. Kaiser to monitor." The release also stated that Taylor "shall not commit any crimes or engage in criminal activity." On March 31, 1997, a modified release order changed the first nonmonetary condition of release stated above to the following: "Defendant shall not consume alcoholic beverages or illegal drugs.—No paraphernalia. Kaiser to monitor." On July 31, 1997, the trial court amended the bail order by substituting a cosigned

$1000 bond for cash on the drug charge, but reiterated to Taylor that "all the same conditions" of release still applied.

On June 5, 1997, the State filed a criminal complaint alleging that Taylor violated his bail because "on May 30, 1997 [Taylor] submitted to a drug screen through Kaiser Group and the results of this drug screen were positive for THC" in a reported amount of "63 ng/ml" that "would indicate that Mr. Taylor has been using THC." After a bench trial, the court found beyond a reasonable doubt that Taylor had violated the "[c]ondition of the bond not to commit any more crimes or not to ingest illegal drugs." Taylor was subsequently adjudged guilty of bail jumping.

Section 946.49(1), STATS., governs bail jumping and provides in relevant part: "Whoever, having been released from custody under ch. 969, intentionally fails to comply with the terms of his or her bond . . . ." The state can convict an individual under § 946.49 by proving (1) that the person has been released from custody on bail, and (2) that he or she intentionally failed to comply with the terms of the bail bond. *See State ex rel. Jacobus v. State*, 208 Wis. 2d 39, 53–54, 559 N.W.2d 900, 905 (1997); WIS J I—CRIMINAL 1795. Taylor disputes the trial court's conclusion that the positive urine test, standing alone, was sufficient to establish that he committed a new crime of possessing marijuana or that he intentionally violated the conditions of his bond by knowingly consuming marijuana.

The test for reviewing the sufficiency of the evidence is set forth in *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990):

[I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not

substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.* at 507, 451 N.W.2d at 757–58 (citation omitted). The *Poellinger* test applies to a jury or a trial judge acting as the fact finder. *See State v. Oppermann*, 156 Wis. 2d 241, 247, 456 N.W.2d 625, 628 (Ct. App. 1990).

The trial court found that there was sufficient evidence to convict Taylor of failing to comply with his bail bond because he consumed an illegal drug *and* because he committed a crime. Prosecuting violations of different conditions of bond is appropriate because each condition of bond serves to protect a different interest and because of the deterrent effect on defendants not to violate the terms of bail. *See State v. Anderson*, 219 Wis. 2d 740, 757, 580 N.W.2d 329, 337 (1998). "The plain purpose of a bail jumping law is to deter those who have been released pending disposition of criminal charges from violating the conditions of their bonds." *State v. Nelson*, 146 Wis. 2d 442, 451, 432 N.W.2d 115, 119 (Ct. App. 1988). Bail jumping laws are also intended to enhance the effective administration of justice in the courts. *See id.* We first address whether Taylor's positive drug test result is sufficient to convict him of bail jumping because he committed a crime.

The State must present evidence beyond a reasonable doubt that Taylor knowingly possessed an illegal

substance in order to prove that he committed a crime. *See* § 961.41(3g), STATS.; WIS J I—CRIMINAL 920; *Poellinger*, 153 Wis. 2d at 508, 451 N.W.2d at 758. In *State v. Griffin*, 220 Wis. 2d 371, 584 N.W.2d 127 (Ct. App.), *review denied*, 221 Wis. 2d 654, 588 N.W.2d 631 (1998), we held that evidence of drugs in a defendant's urine and bloodstream alone is insufficient evidence on which to base a possession of a controlled substance conviction. *See id.* at 381, 584 N.W.2d at 131. We therefore must agree that Taylor's positive urine test alone cannot support a conviction of bail jumping for the crime of *possession* of THC[4] metabolite in his urine. Taylor's bail bond, however, also specifically required that he "shall not consume alcoholic beverages or illegal drugs.—No paraphernalia. Kaiser to monitor." *Griffin* does not address the sufficiency of evidence necessary to support a bail jumping conviction for the *consumption* of THC.

■ Prohibiting a defendant from *consuming* alcohol as a condition of his or her release bond is in accord with the purposes of the bail jumping law. *See Jacobus*, 208 Wis. 2d at 53, 559 N.W.2d at 905. Violating a bail condition prohibiting the consumption of alcohol presents harm to the community. *See Anderson*, 219 Wis. 2d at 756–57, 580 N.W.2d at 336. We perceive no difference between prohibiting the consumption of alcohol or the consumption of illegal drugs as both are in accord with the purposes of the bail jumping law and serve to prevent harm to the community. We conclude that prohibiting the consumption of illegal drugs by a released defendant is a valid condition of bail. We now

---

[4] THC in any form, whether obtained from marijuana or chemically synthesized, is a Schedule I illegal drug. *See* § 961.14(4)(t), STATS.

turn to Taylor's contention that the positive THC metabolite test of his urine is insufficient to convict him of the *consumption* of illegal drugs beyond a reasonable doubt.

"Where the State prosecutes an individual under Wis. Stat. § 946.49 for bail jumping, the focus of the prosecution is on the fact that the individual has violated a condition of his or her bond. The focus is not on the underlying act." *Jacobus*, 208 Wis. 2d at 53, 559 N.W.2d at 905. The State provided scientific test evidence based on Taylor's urine monitoring that he consumed illegal drugs during his release. We are convinced that the State proved beyond a reasonable doubt that Taylor was guilty of bail jumping: he was charged with a felony crime, he had been released from custody on bail, and the undisputed THC metabolite test result of his urine sample proved *consumption* of an illegal drug.

In addition, the State must prove that the defendant *intentionally* failed to comply with the bond condition. *See id.* at 54, 559 N.W.2d at 905. The intentional component of the bail jumping statute entails that "the defendant knew of the terms of the bond and knew that his or her actions did not comply with those terms." *State v. Dawson*, 195 Wis. 2d 161, 170–71, 536 N.W.2d 119, 122 (Ct. App. 1995); *see* WIS J I—CRIMINAL 1795.

At trial, the court expressly found that "the bond [was] signed by the defendant." The court also noted that "when setting bond, many times [the court] does not go into every item that is required on the bond. That's why people are given the bond, told to read the bond, and told to obey the orders of the bond." Taylor does not dispute that he signed or that he understood the bond containing the explicit condition that he "not

consume alcoholic beverages or illegal drugs." We therefore conclude that Taylor knew the conditions of his bond.

■

Taylor also knew or was "practically certain" that his actions did not comply with the terms of his bond. *See* WIS J I—CRIMINAL 1795 n.11. Taylor's bond conditions not only prohibited him from consuming illegal drugs, but the court specifically directed him to be screened for drugs at Kaiser Laboratory. Taylor knew or was practically certain that if he ingested illegal drugs, his drug use could be detected through the court-ordered drug screening. We conclude that the positive THC test result was sufficient to prove Taylor's consumption of an illegal drug and that the test result raised an inference of his knowing violation of his bail condition that he not consume illegal drugs. Taylor presented no evidence to rebut this inference. Therefore, because the evidence was sufficient to prove that Taylor had the requisite knowledge that his actions would violate the terms of his bond, we are satisfied that he intentionally violated his bond conditions and affirm the bail jumping conviction.

*By the Court.*—Judgments and order affirmed.